Opinion adopted March 27, 1888.

---

## No. 2525.

GALVESTON OIL COMPANY *v.* DIGBY B. MORTON.

1. NEGLIGENCE.—The owner of real property is entitled to its exclusive use and enjoyment, and is not liable for injuries occasioned by its unsafe condition when the person receiving the injury was not at or near the place of danger by lawful right, and when the owner has neither expressly nor impliedly invited him there, or allured him by attractions

or inducements exhibited or held out in some way, and calculated to lead him into danger, without giving notice of the point to be avoided.

2. SAME.—A trespasser or mere licensee who is injured by a dangerous machine or contrivance on the land of another can not recover damages unless the machine or contrivance is such that the owner may not lawfully erect, or when the injury is inflicted willfully, wantonly or through the gross negligence of the owner or occupant of the premises.

3. SAME.—One who goes into a place of his own volition where machinery belonging to another is being operated, and on his own business, not being employed or invited by the owner or those in charge, and is injured by such machinery while passing through a place in which employes usually go, and in which only mechanical operations are usually performed, usual in such places, can not recover damages for injuries inflicted in such a place by mechanical appliances which from their location and use are not dangerous to those acquainted with the locality.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

*F. Charles Hume,* for appellant: Plaintiff, entering the premises of defendant, on his own exclusively personal business, without invitation or inducement from it, and proceeding through the premises without requesting a guide, beyond the point to which he had obtained directions, and sustaining an injury, in the absence of gross negligence or intentional wrong of defendant, can not recover. And there is no theory of law permitting him to recover, in the face of the facts proved by himself, that he knew the mill and its machinery were in operation, had before been on the premises, walked deliberately upon the pile of freshly dumped seed without seeking advice from the laborer at work with them, observed nothing about him particularly, and not even noticed where he put his foot. (Sweeny v. Old Colony and Newport Railroad, 10 Allen, 372; Pierce v. Whitcomb, 48 Vermont, 127; Pittsburgh, Fort Wayne & Chicago Railway v. Bingham, 29 Ohio State, 367; St. Louis, Iron Mountain & Southern Railway v. Fairbairn, 23 The Reporter, 748, Supreme Court of Arkansas, May 19, 1887; Gillis v. Pennsylvania Railway, 59 Pennsylvania State, 129; 1 Thompson on Negligence, 303, sec. 3; Indermauer v. Dames, leading English case, reported and annotated in 1 Thompson on Negligence, 283 et seq.; see remarks of Chief Baron Piget, in Sullivan v. Waters, 14 I. R. C. L., 460, quoted by counsel, marking distinction between the rights of one using owner's premises as

a customer or at owner's express invitation, and the rights of
one who has merely the owner's license to go upon the prem-
ises, p. 289; Texas & Pacific Railway v. Best, 66 Texas, 116, to
the point of plaintiff's contributory negligence.)

*Forster Rose* and *E. D. Cavin,* for appellee: The appellant
was liable to appellee, who came into its mill for a lawful pur-
pose by appellant's invitation and inducement, and while so
there and in the exercise of due care and caution, was injured
by appellant's negligence; and that part of the charge of the
court complained of in appellant's first proposition under
seventh error assigned was correctly given.   (Bennett v. Rail-
road Company, 102 United States Rep., 577, 580; Cooley on
Torts., 605, 606; 1 Thompson on Negligence, 507, citing Corby
v. Hill, 307, 308; Wharton on Negligence, secs. 349, 824a, 825,
826; Whitaker's Smith on Negligence, 12, 13, and notes 54, 64,
224, 225 and note; Sweeny v. Old Colony & Newport R'y Co.,
92 Mass., 368, 373, 377; Carleton et al. v. Franconia Iron and
Steel Co., 99 Mass., 216, 217; Crogan v. Scheile, 53 Connecticut,
186, 193, 207; Heaven v. Pender, an English case reported in
Whitaker's Smith on Negligence, 12, note 1.)

Whether or not a given state of facts constitutes an invita-
tion to enter premises is a question for the jury, and they
having passed upon it in this case, their finding is conclusive,
(Gilbert v. Nagle, 118 Mass., 278, 279; Sweeny v. Old Colony &
Newport R'y Co., 92 Mass., 377.)

MALTBIE, PRESIDING JUDGE.   The appellee, Digby B. Morton,
wishing to see Desmond, an employe of the Galveston Oil Com-
pany, went to the office of the company and inquired for him.
Some one in the office, whether an employe of appellant or not
does not appear, informed Morton that Desmond was in the oil
room, and upon inquiring how he could get there was informed
that he could go through the office or through the street entrance.
Arriving at the oil room, appellee inquired again for Desmond,
and was told that he had passed through five or ten minutes
before, went in the direction that he was told that Desmond
had gone, and in passing through the second room from the
oil room received the inquries for which he sues.   Appellee
testified that the room in which the accident occurred contained
cotton seed in sacks piled upon each other as high as a man's
head, that there was only one passage way between the rows

of sacks four or five feet wide. A man was in the room shoveling cotton seed, his back to appellee; the man said nothing. Appellee followed the passage between the sacks in pursuit of Desmond, and, stepping upon a pile of cotton seed in this passage, a foot and a half or two feet high, his foot sank down through the seed into a screw or endless worm under the floor, and was thus injured. The worm was hidden or concealed from view by the cotton seed. The cotton seed may have been in motion, but the motion could not be discovered or was not seen by appellee. He did not know that the worm was under the seed. His business was with Desmond personally; he did not request a guide, nor was any furnished, and no warning was given him of the danger.

It appears that the iron screw, or worm, takes the seed from one part of the building to another, thence to the elevator, from which they are conveyed to the upper story. The feeder such as was used in this mill is in universal use to convey seed. There was and is nothing unusual in its construction or operation. It runs under the floor, which is so made that two or three planks can be taken up, exposing the feeder, so that seed can be dumped into it and carried to wherever wanted; seed are unloaded where the worm runs, and are transported by it to any desired point. But for the feeder, seed would have to be wheeled from the place where unloaded from the cars to the elevator. The hole in the worm is about twelve and a half inches across, and the planks covering it, which are removed when seed are to be received, are about two feet long. The conveyer is something like a flat hopper. A brick wall runs on each side of it as a bearing for a two foot board, and by reason of the wall and the board the seed can not drop on the sides of the conveyer and clog it. Feeder works on same principle as a corn hopper when corn is being ground.

The jury found that appellee was not guilty of negligence; and in the view taken by us of the case, it will not be necessary to consider whether this finding is supported by the evidence. Negligence, as applied by the courts to the affairs of life, depends upon a variety of conditions, circumstances and surroundings. And acts or conditions that would be held to be gross negligence under some circumstances and as to some individuals, under other circumstances and as to other persons would not be considered in any degree negligent. It is a general principle

of law that a person, natural or artificial, may use his property as he pleases, so that he does not willfully or wantonly injure another, in person or property, unless he owes some duty in some way to such other person, when he would be bound to respond in damages on account of an injury inflicted on such person through negligence or the want of ordinary care.

The owner of real property is entitled to the exclusive use and enjoyment of the same, and is not liable to others for injuries occasioned by its unsafe condition when the person receiving the injury was not at or near the place of danger by lawful right, and when the owner has neither expressly nor impliedly invited him there, nor allured him by attractions or inducements exhibited or held out in some way calculated to lead him into danger, without giving notice of the peril to be avoided. (Sweeney v. Old Colony & Newport Railway, 92 Mass., 368; Bennett v. Railroad Company, 102 U. S., 577; Carlton et al. v. Franconia Steel Company, 99 Mass., 216; Cooley on Torts, 605, 606; Pierce v. Whitcomb, 48 Vt., 127; Pittsburgh, Fort Wayne & Chicago Railroad v. Bingham, 20 Ohio State, 367; 1 Thompson on Negligence, 303, sec. 3; Id., 283 et seq.) The doctrine is established by the above and many other cases that a trespasser or mere licensee who is injured by any dangerous machine or contrivance on the land or premises of another, can not recover damages unless the contrivance is such that the owner may not lawfully erect, or use, or when the injury is inflicted willfully, wantonly, or through the gross negligence of the owner or occupier of the premises.

It is sometimes difficult to determine whether the injured party is a mere licensee, or whether he is on the premises by the implied invitation, or by the allurement or enticement of the owner. It is said by Mr. Campbell, in his treatise on Negligence, that the underlying distinctions appear to be that an invitation is inferred where there is a common interest or mutual advantage; while a license is inferred where the object is the mere benefit or pleasure of the person using it. (Burnett v. Railway, 12 Otto, 584, 585.) This distinction is believed to be too narrow to embrace many cases in which owners and occupiers of land have been held liable for injuries negligently inflicted upon persons entering the premises on the implied invitation of the owner; such as where walks have been built by the owner over his grounds, along or adjoining a public

street or walk; or where turn tables and other dangerous appliances have been left unlocked in places calculated to attract or allure children, and other cases of like character. As a general proposition, we think the distinction based upon correct principles. In this instance, appellee went to the mill of appellant solely on his own business, and not at all for the advantage or benefit of appellant. He, for some reason not disclosed, seemed intent on finding Desmond. He went in search of him from the office to the oil room, and thence to the second room beyond, where he met with the accident. The room where it occurred, according to the testimony, was set apart for the storage and distribution of cotton seed, by means of screw or endless worm. It does not appear from the evidence that it was used for any other purpose; nor is it apparent that it was ever contemplated or intended that any one except the employes of the mill should ever pass through this room. The worm was constructed and operated in the usual manner of such appliances, was highly useful and convenient for the purposes for which it was designed, and was in no sense dangerous to persons knowing its location and the mode of its operation.

The location of the room and its surroundings do not appear to have been calculated to allure or entice one to pass through it. Nor do we think it could have been reasonably anticipated that a stranger to the situation would ever attempt to do so, unless a visitor under charge of the proprietor. In our opinion the facts fail to show that appellant owed appellee the duty to send a guide along to prevent him from becoming entangled in the machinery and being injured, for the reason that he was not there in business with appellant or by its invitation either express or implied, because he made no request for any one to accompany him. To require the proprietor of a steamboat, a factory, or a mill, conducted in the usual manner, whenever a man should ask permission to see an employe, engaged in his duties, to anticipate that such person might become involved in some dangerous machinery, hidden or open, would be to exact too high a degree of diligence; but the presumption should be indulged that the person making the inquiry is acquainted with the machinery, its construction and position, and needs no attendant, or otherwise he would have made a request to that effect. We are of opinion that the evidence does not support the verdict, and that there was error in sub-

mitting to the jury the question whether appellee entered the mill by the invitation of appellant, there being no evidence tending to show that he did, for which the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted March 27, 1888.