INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V.
G. T. WOODWARD.

Decided May 30, 1901.

**1.—Railway Company—Negligence—Injury to Person on Track.**

See evidence warranting a verdict against a railway company for injury to plaintiff, struck by a train while walking on and along a part of the railway track long used without objection by the public as a foot path.

**2.—Same—Signals at Crossing—Contributory Negligence.**

It was admissible in such an action to show that it was the usual and known custom for trains to signal for a station and two road crossings, all of which were not far behind where plaintiff was at the time he was struck, and that the signals were not given in this instance, since this bore on the issue of whether or not plaintiff was guilty of contributory negligence in failing to look back for the approach of the train.

**3.—Same—Failure to Signal as Negligence.**

Such evidence was also admissible on the issue of whether or not defendant's employes were using ordinary care at the time in the operation of the train; and the court therefore properly refused to charge that the signals customarily given at crossings and stations are intended only as notice to persons at the station or intending to use the crossings.

**4.—Same—Trespasser on Track—Customary Use.**

Plaintiff was not a trespasser in walking on and along a part of defendant's railway track that had been used by the public as a foot path for twenty-five years without objection to such use by defendant.

**5.—Damages for Personal Injury—Verdict Not Excessive.**

A verdict of $12,500 in plaintiff's favor, while deemed large, is not so excessive as to warrant the appellate court in setting it aside,—plaintiff being a healthy man, 52 years old, earning $1.75 to $3 per day, in addition to what he made on his farm, and the injury being permanent and such as to totally incapacitate him for work, besides causing him a great deal of pain.

**6.—Juror—Disqualification—Objection Too Late.**

Objection to a juror on ground of disqualification, in that he was neither a freeholder nor a householder, comes too late when first urged after verdict, although the disqualification was not known before, and the juror had answered on his voir dire that he was qualified, since it is the duty of parties to inform themselves of the qualifications of the jurors so as to make such objection at the time they are being impaneled.

Appeal from Anderson. Tried below before Hon. A. D. Lipscomb.

*W. B. Teagarden* and *G. H. Gould,* for appellant.

*Campbell & McMeans* and *J. J. Word,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—On December 23, 1898, appellee, while walking southward on appellant's railway track, at a point about 400 yards south of Elkhart station, in Anderson County, was struck by the engine of a train on appellant's road which ran up behind him, and received the injuries for which damages were recovered in this suit. The petition alleges that at the point of the accident the view along the track was unobstructed for a distance of one-half a mile. That a strong wind was blowing in Woodward's face so that he could

not hear the ordinary noises made by the train approaching from be-
hind him. That there were two road crossings between him and the
station. That the train was moving noiselessly down the hill on its
own momentum, and that those in charge of the engine negligently failed
to sound the whistle for the station as they were accustomed to do, and
did not stop there. That they also negligently failed to sound the
whistle or the bell for the road crossings, as they were accustomed to
do. That the track at the point of the accident was daily made use
of by the public as a footpath, which was well known to defendant.
That those in charge of the engine discovered his peril, or by the exer-
cise of ordinary care could have discovered his peril, in time to have
stopped the engine or reduced its speed and prevented the injury.

Appellant answered by general denial and plea of contributory neg-
ligence.

The testimony is conflicting upon some of the issues, but there is
evidence in the record sufficient to support the following conclusions of
fact: Appellee lived three or four miles south of Elkhart, and when
the accident occurred was on his way from said station to his home.
When he approached the railroad track, and before he went on it, he
looked in both directions for trains, and saw none. After getting on the
track he walked along between the rails, going south in the direction of
his home. After walking some distance he met several ladies, and
stepped from the center of the track to the outside of the rail and walked
along on the ends of the ties beside the east or left-hand rail. He had
been walking on the ends of the ties for a distance of 100 yards when
he was struck by the engine. After getting on the outside of the rail
he continued to walk on the ends of the ties until he was struck. A
strong wind was blowing from a southeasterly direction at the time of
the accident. Appellee was walking against the wind, and because of
the wind and the failure of appellant's employes to give the usual sig-
nals at the depot and at the road crossings north of appellee, he did not
hear the approach of the train. He did not look back at any time after
starting south on the track, and did not know that the train was near
him until he was struck. There were two road crossings between the
depot and the place where the accident occurred. The track was
straight, and a man could be seen walking on the track south of the
station for a distance of one-half mile. From the station to the place
of the accident was down grade. The engine was not working steam
between said points, but the train was running along of its own momen-
tum at a rate of about fifteen miles an hour. The train did not stop
at the station, and no whistle was blown and no bell rung for the sta-
tion, nor for either of the road crossings, and no warning of any kind
was given the appellee of the approach of the train. It was the usual
custom of appellant to sound the whistle and ring the bell for the
station and the road crossings, and also usually rang the bell of the
engine while passing that part of the road along which appellee was
walking when struck. Appellee knew of this custom. The railroad

track at the point at which appellee was struck was commonly used by pedestrians as a walk way, and had been so used by men, women, and children, without objection on the part of appellant, for more than twenty-five years. The track at this point was fenced, and in walking down the track appellee crossed a cattle guard about 100 yards south of the station. The engineer testified that he saw appellee about fifty yards ahead of the engine, and could see him until the engine got within fifteen feet of him and his view became obscured by the front of the engine. He says he did not give any warning of the approach of the train because appellee was far enough from the track for the train to pass without striking him. The fireman and a brakeman who were on the engine also testified to seeing appellee, and both stated that they thought he was walking in a safe place. When the fireman first saw appellee he was about the distance of two telegraph poles ahead of the engine. At the point where appellee was struck the track was on a dump. The embankment forming this dump had caved off for a distance of from thirty to fifty feet along the side of the track, thus making the dump at that place two or three feet narrower than at other places on said dump. By actual measurement it was at this place not more than two and a half feet from the ends of the ties to the edge of the embankment, and at other places along the dump the distance was four feet. The engine which struck appellee was a very large one. The cow-catcher at the bottom extended fourteen inches over the rail and had a blade along under it, put there to cut the legs of stock and prevent them from rolling under the engine and derailing the train. The distance from the rails to the ends of the ties was 16 1-2 inches. The bumper beam of the engine extended two feet over the rails and eight inches beyond the ends of the ties. The appellee, when struck by the locomotive, was hurled down the embankment and off to one side a distance of about thirty feet. He was cut in the back of his head and was bruised on his arms, hips, and sides. At the time of his injury he was 52 years old and was a healthy, strong man, capable of performing a great deal of hard work. From the time of his injury, on the 23d of December, 1898, up to the time of the trial in the court below, on December 1, 1900, he had not been able to do any kind of work. Prior to his injury he ran a farm and worked as a laborer cutting logs and also making shingles. He had earned as much as from $1.75 to $3 per day, not including what he made on his farm. He was unconscious for three days after his injury, and was confined to his bed for some time and to the house for several weeks. He has not passed a day or night since the accident that he has not suffered more or less from his injuries, sometimes a great deal and sometimes not so much. His mind and memory have been considerably impaired as a result of his injuries. A walk of a half mile now exhausts his strength. His hearing and eyesight are also impaired. He does not rest well at night, and does not sleep on an average of more than half the night, and sometimes wakes up in the night in pain. Two physicians testified

that the blow on appellee's head had produced concussion of the brain, from the effects of which he is now suffering, and gave it as their opinion that his injuries were permanent. The trial of the cause in the court below resulted in a verdict and judgment in favor of appellee for $12,500.

Appellant's first and third assignments, which are submitted together, are as follows: "(1) The court erred in admitting, over defendant's objection, the testimony of plaintiff and his witness, Jord Montgomery, and other witnesses, to the effect that it was the usual custom of defendant company to blow the whistle and sound the bells of engines for Elkhart station as they approached it, and for the road crossings between the station and the place where plaintiff was struck, and that on the occasion of this accident these alarms were omitted. This was error, because it was immaterial whether such was the custom or not; and it was immaterial whether, if such a custom existed, it was not observed on the occasion in question, since the plaintiff had no right to rely on it. It was not a duty owing by defendant to him under the circumstances, he being only a pedestrian on the track, not using nor intending to use either the crossings or the station premises, and he could not predicate a right to recover on a failure to sound alarms at such places."

"(3) The court erred in refusing to submit to the jury defendant's special charge number 2, as follows: 'You are further charged, gentlemen, that the rules and customs of the railroad company, under which their employes in charge of engines running over the road are required to sound the bell or whistle for stations and other places, and the law which requires the sounding of alarms by bell or whistle for public road crossings, are intended to serve notice on those using, or about to use, the road crossings, and to notify those at the station of the approach of the trains, and to serve other purposes connected with the railroad company's business, and such alarms are not intended, either by the statute or the custom of the railroad, for the benefit of persons who, not being in the employ of the railroad company, use the railroad track as a footpath for their own convenience at other places than road crossings, and persons so using the track as a footpath at other places than crossings have no right to complain if such signals or any of them are omitted. Applying this rule of law to the facts in this case, you are instructed that even though you should find that the whistle of that engine was not sounded for the station and the road crossings, and that the bell was not sounded at said places, this would not add anything whatever to the strength of plaintiff's case, because they owed him no duty to sound such alarms for the station or road crossings, and he can not predicate any right to recover thereon, even if they failed to sound them.'"

Neither of these assignments can be sustained. The evidence complained of in the first assignment was clearly admissible on the issue of contributory negligence. The fact that trains on appellant's road

usually blew the whistle and sounded the bell of the engine·when approaching the station and crossings and while passing along that part of the track on which appellee was walking, and that appellee knew of this custom, and the further fact that no such signals were given on the occasion in question, were circumstances proper to be considered by the jury in determining the question as to whether or not appellee was using ordinary care in walking along the track at the place of the accident without turning and looking back to see if any train was coming behind him.. If the signals had been given on this occasion, the appellee would have been in no danger while walking along appellant's track, as the evidence shows he could have heard them and have gotten out of the way of the train, and it was for the jury to say, under all the circumstances, whether he was guilty of contributory negligence in relying upon the known duty and custom of appellant to give said signals, and in walking along the track without stopping from time to time and looking back for the approach of a train. Railway v. Gray, 65 Texas, 32; Railway v. Brooks, 54 S. W. Rep.; 1056; Railway v. Short, 58 S. W. Rep., 56. We also think the evidence was admissible upon the issue as to whether or not the employes of appellant were using ordinary care in the operation of the train at the time of the accident. In the case of Railway v. Gray, supra, the Supreme Court say: "Whilst the statutory signals to be given at road crossings are intended as warnings to persons upon the road or near the crossings, the failue to give them may be taken into consideration, together with other facts, to show want of reasonable care on the part of the company as to other parties lawfully upon the railway. In the one case the omission of the signals is negligence per se, and may be so declared by the court; in the other it may or may not be negligence under the circumstances, and the jury must pass upon the question."

It follows from the opinion here expressed as to the admissibility of the evidence, that the requested charge set out in the third assignment does not contain a correct statement of the law, and the trial court did not err in refusing to give said instruction to the jury.

The second and eighteenth assignments are submitted together, as both of them challenge the verdict as being unsupported by any evidence. We think the evidence shows such customary and long continued use by the public of that portion of appellant's track on which the accident occurred, without any objection on appellant's part, as would authorize the jury in finding that appellant acquiesced in such use, and that appellee was not a trespasser, but was lawfully on the track at the time he was injured. The evidence is also sufficient to show negligence on the part of appellant's employes in the operation of the train, and that such negligence was the proximate cause of the injury, and to sustain the finding of the jury that appellee was not guilty of contributory negligence. If we concede for the sake of argument, that the evidence shows contributory negligence, we are of opinion that it also shows that appellant's employes saw the dangerous and perilous position of appellee and

could have avoided the injury by the exercise of ordinary care, and they failed to give appellee any warning or to use ordinary care to prevent his injury. The court below did not err in refusing to grant appellant a new trial on the ground of the insufficiency of the evidence to sustain the verdict. Railway v. Watkins, 29 S. W. Rep., 232; Railway v. Gray, 65 Texas, 32; Railway v. Stone, 23 Texas Civ. App., 106; Railway v. Harvin, 54 S. W. Rep., 630; Railway v. Breadow, 90 Texas, 26; Sanches v. Railway, 88 Texas, 117.

The charge of the court fully and clearly instructed the jury upon every issue raised by the pleadings and evidence, and there is no merit in any of appellant's various assignments which predicate error upon certain portions of the charge and upon the refusal of the court to submit to the jury the several special charges requested by appellants, and it would serve no useful purpose to discuss said assignments in detail.

The nineteenth assignment predicates error upon the refusal of the trial court to grant a new trial on the ground that the verdict of the jury is largely excessive in amount, and manifests prejudice and improper motives on the part of the jury. The evidence shows that appellee was dangerously and painfully injured; that he has suffered a great deal, and is wholly incapacitated to perform labor of any kind, and in the opinion of the only physicians who testified in the case his injuries are permanent. While the amount awarded by the jury is large, and is in excess of what we might deem a fair compensation for the injuries received, we can not say, under the evidence, that the verdict is so excessive as to show that it was the result of passion, prejudice, or partiality on the part of the jury, and we are not authorized to disturb their finding. Railway v. Lemberg, 75 Texas, 67; Brown v. Sullivan, 71 Texas, 478; Railway v. Elkins, 54 S. W. Rep., 933.

The twentieth assignment complains of the refusal of the trial court to grant a new trial on the ground that one of the jurors who tried the case was not a qualified juror in that he was neither a freeholder in the State nor a householder in the county in which the case was tried. When examined on his voir dire, this juror answered that he was qualified, and appellant did not know until after the trial that the juror was disqualified, and made no objection to his being impaneled as a juror to try the case. The statute requires all challenges to the array or to an individual juror to be made before the jury is impaneled. It was the duty of appellant to have informed itself as to the qualification of the juror, so as to have made the objection at the proper time. We think it settled that an objection to a juror on the ground of disqualification can not be heard when made for the first time after verdict. Schuster v. La Londe, 57 Texas, 29; Newman v. Dodson, 61 Texas, 96.

We find no reversible error in the record and the judgment of the court below is in all thing affirmed.

*Affirmed.*

Writ of error refused.