HOUSTON BELT & TERMINAL RY. CO.
et al. v. O'LEARY et al.†

(Court of Civil Appeals of Texas. March 31, 1911. On Motion for Rehearing, April 20, 1911.)

1. NEGLIGENCE (§ 33*)—CONDITION OF PREMISES—CARE AS TO LICENSEE.

The rule that an owner of premises is not liable to one entering thereon without invitation for injuries resulting from a dangerous condition continuous in its nature is not applicable to the case of injuries arising from unusual danger which is not of a continuous nature brought about by the negligence of the owner.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 45-47; Dec. Dig. § 33.*]

2. NEGLIGENCE (§ 32*)—CONDITION OF PREMISES—CARE AS TO LICENSEE.

Where a person is rightfully upon the premises of another, even as a licensee, he has the right to require of the proprietor that he so conduct himself as not to injure him through his active negligence.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 32.*]

3. EXPLOSIVES (§ 8*) — NEGLIGENCE OF CARRIER — CARE REQUIRED AS TO LICENSEE — "CONTINUING DANGER."

A railroad company delivering a freight car containing fireworks, and having knowledge of its contents, and its liability to explode from concussion, negligently placed the car at a place in its yards where it would be subjected to impact from other cars. As a result of concussion a fire broke out in the car after an explosion of part of its contents, and, a fire alarm being turned in, plaintiff's intestate, the chief engineer of the fire department, approached the burning car to extinguish the fire, and received a serious injury from a further explosion. Held, that the danger was not a continuing one within the rule that an owner of premises is not liable to one coming thereon without invitation for injury resulting from the usual condition of the premises, and the fact that there was a succession of explosions while the fire was burning did not create a condition of continuous danger so as to bring intestate within such rule.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.*]

4. NEGLIGENCE (§ 32*)—CONDITION OF PREMISES—LICENSEES.

A fireman entering premises to extinguish a fire is, in respect to the duty of the owner of the premises to keep the same in safe condition, a licensee.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42-44; Dec. Dig. § 32.*]

5. NEGLIGENCE (§ 62*)—"PROXIMATE CAUSE" —CONSEQUENCES OF ACT.

Whether an intervening act will break the causal connection between the original wrongful act and a subsequent injury is dependent on whether the injury complained of or some injury of a like character to some other person

similarly situated ought to have been foreseen by defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76–79; Dec. Dig. § 62.*]

6. EXPLOSIVES (§ 8*)—LIABILITY OF CARRIER —PROXIMATE CAUSE.

A railroad company delivering a car containing fireworks consisting of many small packages was bound to anticipate that, if an explosion occurred in the car from improper concussion, a fire would result, and that there would be a continuation of small explosions, and that the fire department would be called upon to extinguish the fire, and that injury might result to the firemen from explosions; and hence its negligence in roughly handling the car causing an explosion which resulted in a fire in the car was the proximate cause of the death of a fireman who approached the car to extinguish the fire, and who received a fatal injury from an explosion.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.*]

7. EXPLOSIVES (§ 8*) — INJURIES FROM EXPLOSIVES—CONTRIBUTORY NEGLIGENCE.

Where a car containing fireworks was set on fire by the negligence of defendant railroad company in handling the car, and during the conflagration a succession of explosions occurred, plaintiff's intestate, a fireman, was not guilty of contributory negligence in approaching the car to extinguish the fire where an interruption in the explosions had occurred, and he believed that all the explosives in the car had been ignited.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 8.*]

8. EXPLOSIVES (§ 8*)—INJURIES FROM EXPLOSIONS — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company for the death of plaintiff's intestate resulting from defendant's negligence in handling a car containing fireworks, evidence *held* to present a question for the jury whether plaintiff, a fireman, was guilty of contributory negligence in approaching the car to extinguish the fire therein.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 8.*]

9. EXPLOSIVES (§ 8*)—INJURIES FROM EXPLOSIONS—PERSONS LIABLE—EVIDENCE.

In an action against a railroad company and a terminal company for injuries to a fireman while attempting to extinguish a fire in a car containing explosives, the fire having resulted from the negligence of the employés of the terminal company handling the car, evidence *held* to show such a community of interest in respect to the switchyards at the place where the fire occurred as to authorize a joint judgment against defendants.

[Ed. Note.—For other cases, see Explosives, Dec. Dig. § 8.*]

10. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

In an action against a railroad company and a terminal company for the death of a fireman while attempting to extinguish a fire in a car containing explosives, the fire having resulted from the negligence of the employés of the terminal company in handling the car, an erroneous instruction that the jury must find that the car was being handled by the employés of the railroad company was not ground for reversal, where, under the facts of the case, both companies were liable for the death.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

11. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—IMPROPER ARGUMENT OF COUNSEL.

Though a certain line of argument for the prevailing party was fallacious, the judgment will not be reversed where the appellate court cannot say in view of the entire record that the remarks were prejudicial to appellant, or that they in any way influenced the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

12. DEATH (§ 99*)—DAMAGES—EXCESSIVE RECOVERY.

Where a railroad company negligently placed a car containing explosives at a place in its yards where it would be subjected to concussion through the impact of other cars, and, owing to concussion, a fire broke out in the car after an explosion of a part of the contents of the car, and plaintiff's intestate, the engineer of the fire department, was killed by an explosion while endeavoring to extinguish the fire, a recovery of $20,000 from the railroad company for his death *held* not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Amelia O'Leary and others against the Houston Belt & Terminal Railway Company and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

Andrews, Ball & Streetman and A. L. Jackson, for appellants. John Lovejoy and J. W. Parker, for appellees.

McMEANS, J. Appellees, Amelia O'Leary, for herself, and Irene O'Leary, a minor, suing by her mother and next friend, brought this action in the district court of Harris county, Tex., for the death of the husband and father, Thomas O'Leary, resulting from personal injuries inflicted upon him by the explosion of combustible materials loaded in a certain box car in the custody and charge of the defendants, Houston Belt & Terminal Railway Company and Gulf, Colorado & Santa Fé Railway Company, in the city of Houston, November 22, 1908.

The plaintiffs' first amended original petition, on which trial was had, alleged, in substance, that long prior to the date of his injury Thomas O'Leary was and had been chief engineer of the fire department of the city of Houston, with all the duties and powers vested in and imposed upon him by certain ordinances of said city, establishing and maintaining such department, embracing the duties and powers of going to fires and aiding in the extinguishment of same, with general supervision over the other firemen, and with various police powers; that on the 22d day of November, 1908, the defendants had brought into the city of Houston and placed upon their side tracks, in close proximity to residences and other buildings of said city, and at a place which, was frequented by the public, a car load of inflammable and explosive material; that through the negligence of the defendants said ma-

terials were ignited, and a great conflagration was then and there imminent; that the said O'Leary, in performance of his official duties as chief engineer, together with other members of the fire department, went to the scene of the conflagration; that while in diligent and earnest effort to extinguish and prevent the spread of the flames an explosion of some of the contents of the car occurred, knocking the said O'Leary down, wounding and bruising him, and causing injuries from which afterwards on the 24th day of December, 1908, the said O'Leary died. And said petition specially alleged negligence on the part of defendants as the proximate cause of the injury and death, as follows: "That they omitted, as soon as the car was received in the said yard, to place the same upon their unloading tracks, where there would have been little or no danger of the contents thereof being exploded; but, instead, kept the car for an unreasonable and unnecessary length of time in a thickly settled part of the city, in the midst' of engines and cars, the former containing large quantities of fire, and some of the latter containing inflammable freight, and which were constantly being switched, without any guard or watch over the said car to see that its contents were not ignited, and otherwise handled the car as though it contained ordinary freight, and the contents of the said car were caused to explode by fire communicated thereto from the said engines and by concussion as a result of bringing engines and cars in contact therewith, with improper and unnecessary force, or, if the contents were not caused to explode in such manner, then plaintiffs say that keeping the car at the place for the time and in the manner done constituted the same a nuisance, and the explosion of the contents, followed by a conflagration, were results that should have been anticipated by defendants and their said agents and employés in the exercise of ordinary care under the circumstances, and that the members of the fire department, including the chief thereof, would be drawn to the said fire, for the purpose of extinguishing the same, and protecting the surrounding property, and would probably be ignorant of the contents of the car, and of the danger of injury to which they would be exposed by an explosion thereof, and failed to notify said O'Leary of the contents of said car, or to warn him of the danger which he and the other members of the department would incur in attempting to extinguish the said fire, as was their duty to do, and as they could readily have done."

The defendants, after general demurrer, answered by pleas of (1) general denial; (2) contributory negligence on the part of Thomas O'Leary, in that he voluntarily and carelessly subjected himself to the danger of the explosion and placed himself in position whereby the injury was inflicted upon him;

(3) a special denial that the alleged explosion and conflagration were the proximate result of any wrongful act on the part of defendants; and (4) a further special plea that the alleged negligence of defendants was remote in its relation to the injury and death of Thomas O'Leary, in that "the said Thomas O'Leary, prior to the time of approaching the car, knew and realized the existence of the conflagration, and of the explosive condition and tendencies of the contents of said car at and prior to the time of approaching the same, and coming in contact with said danger, and that, notwithstanding such knowledge and opportunity to know such facts and condition, the said Thomas O'Leary voluntarily encountered the danger," and thus the voluntary act of the said O'Leary intervened, and became itself the immediate and proximate cause of his injury and death, and the alleged negligence of defendants "was remote in its relation to the injury and death of deceased, . * * * and that, in so far as they are concerned, the said explosions and the injury and death of deceased were the result of an unavoidable and inevitable accident, for which they are in no wise liable."

The case was tried before a jury, and resulted in a verdict and judgment for plaintiffs for $20,000, from which the defendants, after their motion for new trial was heard and overruled, have appealed.

Appellants requested the court to charge the jury to return a verdict in their favor, and the refusal of the court to so charge is made the basis of their first assignment of error. Their first proposition under this assignment is as follows: "Tom O'Leary, having entered the position of danger on defendants' right of way and railroad, without invitation, either express or implied, from defendants, was at most a mere licensee under the law, and not within the rule which would require the owner of premises to have them reasonably safe for those invited thereon; and the explosions having resulted from the necessary handling of freight which defendants were legally bound to accept and transport and deliver, and there being no proof of willful or wanton wrong, or gross negligence, on the part of defendants, causing the injury, they were not liable therefor, and peremptory instruction in their favor should have been given."

By their third proposition they contend that "the undisputed evidence showing that after the alleged negligent acts of defendants, on which this action is based, had produced their effect in causing the explosions to begin, and made the continuing dangerous situation manifest, Thomas O'Leary, with full knowledge of the occurrences and the dangers impending, left his position of safety, and knowingly, at his own election, entered into the place of peril at which he encountered the explosion, such volunteer act

on his part intervening between the alleged negligence of defendants, and his injury became itself the proximate and supervening cause, without which his injury would not have occurred, thus leaving the alleged negligence of defendants remote in its relation to the injury, and not actionable in law."

The evidence in the record justifies the following conclusions of fact on the issues presented by the propositions quoted: On Saturday, November 21, 1908, at about 2:30 p. m., the day before O'Leary's injury, a box car loaded with various kinds of fireworks arrived in what is known as the "Houston South Yard," located south and east of the corporate limits of the city of Houston, where it remained until between 11 and 12 o'clock a. m. the next day, Sunday, when it was brought to what is known as the "Congress Street Yard," within the city limits. The car had a tag on it showing that it was loaded with explosives, and the fact that it contained explosives was known to the servants of defendants when handling and switching the car in the yards. The contents of the car was such as could be exploded either by spontaneous combustion or by concussion, but we conclude from the evidence that the explosion hereafter mentioned was due to concussion brought about by the negligence of the employés of the Houston Belt & Terminal Railway Company in causing a collision of the car with other cars in the yards. The car also had a tag on it indicating that it was to be weighed and thereafter to be placed on the "city track," so the switching crew accordingly placed it on the track convenient to the scales, known as the scales track. Between 2:30 and 3 o'clock p. m. Sunday, November 22d, while a switching crew of the Houston Belt & Terminal Company was engaged in switching cars on the track where the car of fireworks was located, this car was negligently kicked in on another track so that it ran violently against other cars, and this caused an explosion of some of the contents of the car, followed thereafter by frequent other explosions, at intervals, thus causing the car and contents to be come ignited and ultimately wrecked, and the contents consumed. After the explosions commenced a person not connected in any way with the defendants or with the fire department of the city of Houston turned in a fire alarm, and this brought a portion of the fire department and the deceased O'Leary, to the scene of conflagration. At this time the deceased, O'Leary, was chief engineer of the fire department, and it was his duty, under the ordinances of said city, to personally attend all fires that might break out in the city and superintend the extinguishment thereof. He was vested at such times with sole command of all members of the fire department and all other persons who might be present, and he was required to take proper measures for the ex-

tinguishment of fires, protection of property, preservation of order, and observance of laws, ordinances, and regulations respecting fires. When O'Leary heard the fire alarm, he went hurriedly in his buggy toward the scene, and, when he arrived within the distance of a block or two, left his buggy and proceeded toward the car afoot, after giving some general directions to other members of the fire department as to their proper conduct, and had gotten within some 12 or 15 feet of the car when an explosion occurred, more violent perhaps than any that had preceded it, knocking him down, and producing the injuries which afterwards resulted in his death.

[1] It is upon this state of facts that appellants invoked the doctrine stated in Greenville v. Pitts, 102 Tex. 2, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843, Railway Company v. Morgan, 92 Tex. 102, 46 S. W. 28, Oil Company v. Morton, 70 Tex. 403, 7 S. W. 756, 8 Am. St. Rep. 611, and other cases cited in their briefs to the effect that the owner of premises is not liable to others for injuries occasioned by the unsafe condition of same when the person receiving the injury was not at or near the place of danger by lawful right, and when the owner has neither expressly nor impliedly invited him there. This doctrine is sound, and has often been recognized and applied in the Texas decisions. But in all the cases we have examined the injuries for which damages were sought grew out of a permanent or fixed condition of the premises existing at the time the party injured entered upon them, such, for instance, as the uninsulated electric wire, as in Greenville v. Pitts; the unguarded turntable, as in Railway v. Morgan; the uncovered cotton seed conveyor, as in Oil Company v. Morton, supra; the excavation filled with water, as in Dobbins v. Railway, 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856; or the manner in which ties were piled, as in Railway, v. Edwards, 90 Tex. 68, 36 S. W. 430, 32 L. R. A. 825. In no case that we have examined or to which our attention has been called has it been held that the proprietor cannot be held liable to a licensee who while upon the premises is injured, not by conditions then existing on the premises, but by some affirmative negligence of the proprietor or his servants. The failure to insulate a wire, to guard a turntable, to cover a conveyor or to fill an excavation are omissions of which ordinarily a mere trespasser or licensee cannot complain if he be injured in consequence of their existence, and, as to him, the proprietor owes no duty of protection against injury therefrom.

[2] But it has been often held that where a person is rightfully upon the premises of another, even as licensee, he has the right to require of the proprietor that he so conduct himself as not to injure him through

his active negligence. This rule has been applied and followed in many cases in this state where a licensee has entered upon the right of way of a railway company and while using, with ordinary care, the track for purposes of his own, is injured by the affirmative negligence of the railway company or its employés. Washington v. Railway, 90 Tex. 314, 38 S. W. 764; Railway v. Woodward, 26 Tex. Civ. App. 389, 63 S. W. 1051; Railway v. Phillips, 37 S. W. 620. See, also, 18 Am. & Eng. Enc. of Law, 1136, 1137; Harriman v. Railway, 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507. In both instances the premises were unsafe, one because of the existence of fixed conditions which in themselves rendered them unsafe, and the other, not because of the existence of such conditions, but because of some negligent act committed by the proprietor or his servants which then created the danger and caused the attendant results.

[3] Clearly the facts of this case do not bring it within the reason of the rule first instanced. Can it be brought within the other? Appellants contend, in effect, that although the condition which resulted in O'Leary's injury was not a permanent one, such as an unguarded excavation, etc., yet the act which caused the explosions (conceding that it was caused by concussion and that the concussion resulted from negligence of its employés) rendered the premises dangerous, and this condition of danger was present when O'Leary reached the scene, and voluntarily placed himself in such proximity of the car as to be injured by a further explosion, and that, therefore, the rule first discussed would apply. To this we cannot assent.

[4] It seems to be conceded that O'Leary in entering upon the premises under the circumstances detailed was a licensee, and, if not so conceded, we hold that he was. It is true that the negligent act of starting the explosions was committed before O'Leary entered the defendants' premises; but this act must be held to have continued and to have been coexistent with the result that followed, so that each subsequent explosion of portions of the contents of the car related back to the original act, which must be treated as the direct and immediate act which resulted in the explosion that injured O'Leary. In other words, the negligence was a continuing one, so that whether O'Leary had been present as a licensee at the time the first explosion occurred and was then injured, or whether he arrived after the first, but was injured by an explosion subsequently occurring, the negligent act which caused the explosions will be regarded as having been committed at the time of the occurrence of each explosion.

This brings us to a consideration of appellants' contention, presented in their third proposition, above quoted, to the effect that the act of O'Leary in placing himself in the place of peril where he encountered the explosion intervened between defendants' negligence and O'Leary's injury, and thus became the proximate cause of the injury, without which it would not have occurred, thus leaving the alleged negligence of defendants remote in its relation to the injury. To this we cannot agree. The defendants were charged with the knowledge that the car contained fireworks in their original packages, and must have known that the contents of the car were explosive, and likely to be set off by concussion. Being in separate packages, they must also have known that an explosion of the whole would not at once occur upon the explosion of one, but that the ignition of one would cause the others to ignite, and that successive explosions would follow as the fire caused by one would be communicated to another. They also knew that such an explosion would cause a conflagration of the car and perhaps of others unless promptly extinguished. The car was within the city limits, and defendant was chargeable with knowledge of the public ordinances of the city which required the fire department to repair to and extinguish all fires, and made it the duty of O'Leary to attend in person and superintend such extinguishment.

[5] In determining the character of an intervening act which will break the causal connection between the original wrongful act and the subsequent injury, the question always is: Ought the injury complained of or some injury of a like character to some other person similarly situated to have been foreseen by the party whose. alleged negligence has caused it as the probable sequence of such negligence? If so, then the causal connection between the negligence and the injury is not broken.

[6] We think that under the facts of this case the employés of defendant in negligently causing the explosions that resulted in O'Leary's injury and death ought to have reasonably foreseen that the explosions would start a conflagration, and that O'Leary and other members of the fire department in obedience to the duties required of them by the ordinances of the city would come upon the scene, and that O'Leary, or some other person so situated as to be within the circle or range of the explosions, would probably be injured thereby in consequence of such negligence under the operation of natural laws. Washington v. Railway, 90 Tex. 314, 38 S. W. 764; Seale v. Railway, 65 Tex. 274, 57 Am. Rep. 602; Railway v. Bigham, 90 Tex. 223, 38 S. W. 162; Gonzales v. Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17.

This brings us to a consideration of the second proposition urged by appellants under their first assignment, which is as follows: "The undisputed evidence showing that Thomas O'Leary entered voluntarily into the position of danger at which the in-

juries were received, after he knew of the peril, and had been warned to avoid it, he as matter of law was guilty of contributory negligence, or such deliberate and reckless assumption of risk in the public service as to preclude recovery from defendants on account of their alleged negligence." It was shown by the testimony that, after the fire alarm was sounded, O'Leary hurried to the scene of the explosions in his buggy, and, upon arriving at a distance of a block or two from the car, left the buggy and proceeded toward the car on foot. From the time O'Leary started to the fire the explosions were loud and numerous and evidently heard by him. One witness, an employé of defendants, testified that just before O'Leary left his buggy he shouted a warning to him of the danger of going too near the car, and another employé testified that, as O'Leary approached the car, he called out to him: "Better look out, liable to be powder in that car," and that he "hollered loud enough for him to have heard me." A. L. Anderson, who was O'Leary's chief assistant, testified in part as follows: "I got there before Mr. O'Leary. He came up, and he and I had this conversation about the fire. At the time of that conversation the fire had not left the car that it was in originally. The condition as regards the fire existed there when O'Leary came up. When O'Leary and I had this conversation, the flames were going out of the roof and beneath and on the outside of the car. At that time O'Leary and I walked down to, well, about a block from the car, when we stopped the apparatus, and, when he got out of the buggy, and as the chemical fireman pulled the hose down, he and I walked down to the fire together, and somebody told him there was oil next to this car, these other cars had oil in them. I don't know where it was, and I says to O'Leary that I was scared of this explosion, and I says, 'Let's get in behind this car here and fight in from this way,' and he says, 'If we monkey around here, this oil will catch,' and he says, 'There ain't no more explosions to happen now, the fire is all out of the car.' And he says: 'There has been several explosions. I heard them on the way down here, and there ain't on danger in it now.' So he went on over to get in behind this other car that was standing on another track closer to us than the car that was burning to get in and shut it off from the oil car, and when the chemical— He had a line of hose then, and when the chemical line came up he moved his hose further down to the burning car, and put his chemical line on the oil car, and it wasn't a minute, or maybe a little bit longer than a minute, until the explosion happened. * * *" He further testified: "I didn't see Chief O'Leary until about, I guess, three minutes (after the explosion) for the smoke, and it blowed Roman candles up to pretty near Rusk street, so I

crawled up along the hose, and seen a body lying over to the left of the hose, and it was a fellow by the name of Joe Handon, and I says, 'Where is the Chief,' and he didn't say anything. There was a fellow, he looked to be a railroad man, I don't know who he was, had O'Leary about the arms and was dragging him. * * *"

[7, 8] If the situation was such at the time of the conversation between O'Leary and Anderson that a person of ordinary prudence, circumstanced as O'Leary was, would have believed that no more explosions would occur, and if a person of ordinary prudence situated as O'Leary was would have approached the car as O'Leary did, then O'Leary was not guilty of contributory negligence. We think the evidence of Anderson was sufficient to make the question one for the jury, and their determination of it against the contention here made by appellants is conclusive upon us.

This conclusion also disposes of the issue of assumed risk presented by appellants' second proposition.

What we have said in disposing of appellants' first assignment disposes also of the second and third, both of which are overruled.

By their fourth assignment appellants contend that the judgment rendered against the Gulf, Colorado & Santa Fé Railway Company is erroneous, because said company before the injury of O'Leary had delivered the car in question to the Houston Belt & Terminal Railway Company, and at the time of the explosion it was in the latter's possession and in its yards, and being handled by the switch engine and employés and agents of said last-named company, and they contend under this statement that the liability of the Gulf, Colorado & Santa Fé Railway Company had ceased, and that no negligence was proved against said company authorizing any judgment against it. It was shown by the testimony that the car in question was delivered by the Gulf, Colorado & Santa Fé Railway Company to the Houston Belt & Terminal Railway Company on November 21st, and was thereafter handled by the switch engine and employés of the last-named company. It was shown, however, by the testimony of the witness Dever, transportation inspector of the Gulf, Colorado & Santa Fé Railway Company, that the yards in which the car was at the time of the explosion was operated jointly for the benefit of both companies. This witness further testified as follows: "The yard in which the explosion occurred is known as the old Santa Fé yard. It was called the 'Congress Street Yard.' However, it was operated by the Houston Belt & Terminal. The Houston Belt & Terminal Company's property line began at what is known as mile post 49—that is, about three or four miles south of Houston on the main line of the Santa Fé—and the Belt & Terminal

operated under their name and with its employés all of the track of said companies in that territory. It was done at joint expense. The expense was prorated on the basis of the amount of business each line did. There was another yard also that belonged to the combination; that is South yard. That yard is out of town altogether. * * *"

The witness Gossran, chief clerk to the general manager of the Houston Belt & Terminal Company, testified that the car came over the Gulf, Colorado & Santa Fé Railway. "It would be in the possession of the Houston Belt & Terminal Railway Company just as soon as it would hit the terminals. It would come directly off of the Santa Fé line onto the terminals, onto our rails. Whenever the car hit the yards, we disposed of it. The Gulf, Colorado & Santa Fé had no separate yards from the Houston Belt & Terminal Company in this city."

[9] We think this testimony, undisputed as it was, authorized a joint judgment against both appellants. Railway v. Dorsey, 66 Tex. 151, 18 S. W. 444; Railway v. Jones, 75 Tex. 152, 12 S. W. 972, 16 Am. St. Rep. 879; Dillingham v. Crank, 87 Tex. 107, 27 S. W. 93; Railway v. Croskell, 6 Tex. Civ. App. 160, 25 S. W. 486.

[10] The assignment is overruled, as is also the fifth assignment, which complains of that part of the court's charge wherein the jury were instructed that they should treat as being proved that the car was brought into the defendants' yards, and was being handled by their employés. If both companies were answerable for the damages sustained by the plaintiffs because of their joint operation of the yards, the error in charging that the employés who handled the car were the employés of both was immaterial and harmless.

The charge of the court fully and clearly instructed the jury upon every issue raised by the pleadings and evidence, and there is no merit in any of appellants' various assignments which predicate error upon certain portions of the charge and upon the refusal of the court to submit to the jury the several special charges requested by appellants, and it would serve no useful purpose to discuss said assignments in detail.

[11] The remarks made by counsel for appellees in the concluding argument were improper. As an argument, it was fallacious; but we cannot say in view of the entire record that such remarks were prejudicial to appellants, or that they in any wise influenced the jury either in returning a verdict for the plaintiffs or in fixing the amount of their award. The twelfth assignment raising the point is overruled.

[12] The verdict was large, but we cannot say that it was so excessive as to indicate that the jury was actuated by prejudice, sympathy, or other improper motive in reaching a conclusion as to the amount. Railway v. Davenport, 110 S. W. 157.

The judgment of the court below is affirmed.

Affirmed.

## On Motion for Rehearing.

We have carefully considered appellants' motion for a rehearing, and are of the opinion that the same should be overruled and it has been so ordered.

In our opinion filed herein we say in discussing the assignment of error complaining of certain remarks made by appellees' counsel in the concluding argument that "we cannot say in view of the entire record that such remarks were prejudicial to appellants, or that they in any wise influenced the jury either in returning a verdict for the plaintiffs, or in fixing the amount of their award." The conclusion we reached in deciding the case was that such remarks in our opinion were not prejudicial to defendants, and did not in any wise influence the jury either to return a verdict for the plaintiffs or in fixing the amount of their award, and we now so hold.