## KIRBY LUMBER CO. v. GRESHAM.

(Court of Civil Appeals of Texas. Galveston. Nov. 1, 1912. Rehearing Denied Dec. 5, 1912.)

1. NEGLIGENCE (§ 32*)—CARE REQUIRED AS TO LICENSEE.

A person riding on another's log train without any express or implied invitation or contract, and without his consent or acquiescence, was a mere licensee to whom the owner owed the duty only of using ordinary care in the management and running of the train, and to whom it was not liable for negligence caused by the defective condition of its track, since a licensee must accept the premises or property of another upon which he enters for his own purposes as they are.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

2. MASTER AND SERVANT (§ 224*)—CARE REQUIRED AS TO LICENSEE.

Where there was no evidence that an employer derived any benefit or advantage from his employés riding on one of its log trains, or that it was under any obligation to carry them thereon, but, on the contrary, it appeared that an employé rode thereon in order to reach home earlier, and solely for his own benefit, he was a mere licensee and had no implied invitation to so ride.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 654; Dec. Dig. § 224.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by Phil Gresham against the Kirby Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Oliver J. Todd, of Beaumont, and Andrews, Ball & Streetman, of Houston, for appellant. Blain & Howth and M. G. Adams, all of Beaumont, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries alleged to have been caused by the negligence of appellant. Plaintiff's petition alleges, in substance, that on or about the 25th of March, 1910, plaintiff was in the employment of defendant as a woodcutter or sawyer; that he was employed to cut or saw logs in the woods several miles from the town of Buna where the defendant operates a lumber mill; that it was at the date mentioned, and had long been, the custom of defendant's employés who worked in the woods to ride to and from their work on defendant's trains and cars; that such custom was known to and acquiesced in by the defendant and was for the mutual benefit and profit of defendant and its said employés; that in pursuance of said custom, and with the consent and under the direction of defendant and its authorized agents, plaintiff, on the date before mentioned, after having finished his day's work in the woods, got upon a flat car or trailer of a train composed of an engine, flatcar or trailer, and log cars loaded with logs, for the purpose of returning to his home at Buna, and while riding upon said train it was negligently derailed and wrecked and plaintiff was thereby injured.

The acts of negligence charged in the petition are as follows: (a) A failure to provide a reasonably safe track, in that (1) the rails thereof were not spiked and attached and fastened in any manner to the ties, or were not spiked and fastened with reasonable se-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

curity for a distance of several feet or about five ties, and (2) the track and roadbed were curved and rested on a wet, boggy, and muddy foundation, which caused and permitted the track to sink and to be low and depressed, especially on one side; (b) the running and use of said engine, which was too heavy and dangerous under all the circumstances for said defective and curved part of the track; (c) the running of said engine without air or other brakes with which to control the speed thereof down a steep hill immediately before passing said defective part of the track, by reason of which incline and hill, the said engine and cars attained a speed high and dangerous, under all the circumstances and conditions.

The defendant's answer consisted of: (a) A general demurrer; (b) a general denial; (c) pleas of contributory negligence and assumed risk; (d) a special plea, in substance, that the log train was not provided or fitted up for plaintiff or other employés to ride upon, but that the defendant had provided regular trains for the purpose, and that plaintiff was not expected, required, or invited to ride upon it, nor was it necessary for him so to do, and that it was against the rules, order, and wishes of the defendant for him so to do, and that he was riding upon it solely for his own convenience and pleasure, and that the defendant owed him no duty with respect to the matters complained of by him; (e) a special plea, in substance, that the defendant had made and promulgated rules prohibiting riding on its log trains, and that the plaintiff was riding on the log train in violation of said rules; and (f) a special plea, in substance, that the plaintiff voluntarily and without necessity selected the log train as a means of returning from his work, which train, while being run over the temporary switch track upon which the accident occurred, was a notoriously dangerous means of transportation, for the sole purpose of convenience to himself in getting to his destination earlier, in preference to waiting until later in the afternoon and riding in on the regular train provided by the defendant to carry employés from their work, which regular train was run only over the permanent main line track and was a safe means of transportation, and by such voluntary choice on his part was precluded from recovering.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $9,500.

The evidence shows that plaintiff was injured at the time and place alleged in his petition as a result of the derailment of a log train owned and operated by appellant and upon which he was riding in from his work in the woods to his home in the town of Buna. At the time of his injury he was employed by appellant to saw logs in the forest. He furnished his own tools and was paid according to the number of feet of logs sawed by him. He was not required to work any specific time. He and the other employés who composed the sawing crew were only expected to saw enough logs to keep the loading crew engaged, and they quit work at any hour in the day that they found they had sawed the logs that were necessary to keep the loaders busy.

The appellant company is organized and chartered for the purpose of manufacturing lumber and is not a common carrier or railroad company. It operates a lumber mill at Buna and owns and maintains a tram railroad which it operates in connection with said mill for the purpose of hauling logs from the woods or forest to the mill. The main line of this road extends from Buna to a point in the woods called the corral, a distance of about four miles. Near the corral a switch track branches off to the right of the main track and extends into the woods for a distance of a mile and one half. This switch track is known as the "loading switch." Another switch track, known as the "skidder switch," branches off to the left of the main track from a point near the corral. These switch tracks are intended for temporary use only and are removed from time to time as the timber is cut from along their line. The loading switch, upon which the injury to plaintiff occurred, had been in use a month or two. This track was poorly constructed, in that the rails were not securely fastened to the ties, and the foundation or bed of the track upon which the ties rested was soft and boggy. These defects in the track caused the derailment of the train and the consequent injury to plaintiff. The appellant company furnished and ran a train every working day consisting of an engine and caboose, or an engine and a flat car, from Buna to the corral and back. The employés of the company who worked in the woods were carried back and forth on this train which left Buna at a certain hour every morning and returned from the corral every evening about 6 o'clock. The hands quit work in the woods usually about 5:30 p. m. The engine which was used on the loading switch for the purpose of hauling in the cars of logs whenever a sufficient number of cars were loaded also had a flat car or trailer attached thereto. A trailer was used in all log trains and was necessary to connect the engine with the loaded log cars because of the projection of the logs over the ends of log cars. The trailers generally used for this purpose were skeleton flat cars without flooring. The starting of the log trains from where the logs were loaded was at no regular time. Whenever a sufficient number of cars were loaded, the engine and trailer which did the switching on this track would couple onto them and take them out to the main line or on to the mill at Buna. Because of the danger in

riding upon these trains of loaded log cars, appellant promulgated a rule forbidding its employés, other than those engaged in the operation of such trains, from riding thereon. There is much testimony tending to show that the appellant made reasonable efforts to enforce this rule; but there is sufficient testimony to sustain the finding of the jury that appellant did not use ordinary care in this respect, that the rule was habitually violated with the knowledge and acquiescence of appellant, and its enforcement, in effect, abandoned. All the evidence shows that these log trains were not provided or intended for the transportation of the employés from the woods, and appellant was under no contract or agreement, either express or implied, to transport its employés thereon. It was in no way to the benefit or advantage of appellant for its employés to ride upon said trains, but employés rode thereon solely for their own convenience and to save walking the distance from the place they were at work along the switch track back to the corral at the end of the main track, from which place appellant, as before stated, had provided a train to carry them to Buna which train left the corral regularly every evening about 6 o'clock. When the log train did not stop at the corral, the employés by riding on said train reached Buna some time earlier in the evening than the regular train from the corral reached that place, and for this reason they frequently rode on the log train.

The evidence sustains the finding of the jury that the plaintiff was not guilty of contributory negligence and did not assume the risk of injury, if such injury was caused by the negligence of defendant in the performance of any duty it owed the plaintiff. The only grounds of negligence submitted to the jury were the alleged defects in the construction and maintenance of appellant's track. The undisputed evidence shows that the track was in the condition alleged in the petition, and this was the proximate cause of the derailment of the train and the consequent injury to plaintiff. The evidence also sustains the verdict of the jury as to the amount of damages sustained by the plaintiff.

Under an appropriate assignment of error, the appellant complains of the refusal of the trial court to instruct the jury to find a verdict in its favor as requested by it. It is contended by appellant that this instruction should have been given because the undisputed evidence shows that the log train upon which appellee was riding at the time he received his injuries was not provided by the appellant for its employés to ride on either to or from their work, and plaintiff in riding thereon upon the occasion in question was so riding solely for his own convenience and benefit, and not for the convenience or benefit of appellant; that it was wholly un-

necessary for him to ride on said train, and he was not required or invited either expressly or impliedly so to do; that plaintiff was at most only a licensee upon said train, and as such the defendant owed him no duty to keep its track or roadbed or other premises in a reasonably safe condition, and the only negligence alleged or proven against appellant was its failure to use ordinary care to properly construct and maintain its track and roadbed in a reasonably safe condition, no active negligence on appellant's part being either alleged or proven.

[1] If appellee was riding upon appellant's log train without any invitation or any contract on the part of appellant, either expressed or implied, but with the consent or acquiescence of appellant, he was a mere licensee, and the only duty which appellant owed him was to use ordinary care in the management and running of the train, and it was not liable for any injury caused him by the defective condition of its track. In the case of Railway Co. v. Spivey, 97 Tex. 143, 76 S. W. 748, our Supreme Court, in stating the duty of a railway company to a licensee riding upon its 'cars, says: "If he used the cars as a licensee, it was at his own risk, for he must accept them and the track over which they pass in the condition in which he found them. The company was under no obligation to arrange its yards, tracks, and schedules to suit his convenience, or to secure his safety while riding on its freight trains."

The general rule that a licensee must accept the premises or property of another upon which he enters for purposes of his own and without being invited thereon by the owner is sustained by all the authorities. Oil Co. v. Morton, 70 Tex. 400, 7 S. W. 756, 8 Am. St. Rep. 611.

It is sometimes difficult to determine from the facts of the particular case whether the person injured upon the premises of another is there by the implied invitation of the owner or is a mere licensee. Mr. White, in his book, Personal Injuries on Railroads, says: "In ascertaining the relation which an injured person bears to the owner of premises where the injury was received, it is generally held to be a reliable test, in determining the duty owing by the owner, to inquire whether or not the injured person at the time of the injury had business relations with the owner of the premises which would render his presence of mutual aid to the two, or whether his presence was for his own convenience or on business with others than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the owner of the premises and the injured person, or to the former alone, there is generally held to be no implied invitation on the part of the owner. Benson v. Traction Co. [77 Md. 535] 26 Atl. 973 [20 L. R. A. 714, 39 Am. St. Rep.

436]; Plummer v. Dill [156 Mass. 426] 31 N. E. 128 [32 Am. St. Rep. 463]."

In the case of Bennett v. Railway Co., 102 U. S. 577, 26 L. Ed. 235, the Supreme Court of the United States, speaking through Mr. Justice Harlan, says: "It is sometimes difficult to determine whether the circumstances make a case of 'invitation' in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. 'The principle,' says Mr. Campbell, in his treatise on Negligence, 'appears to be that invitation is inferred where there is a common interest or mutual aid, while a license is inferred where the object is the mere pleasure or benefit of the person using it.' "

[2] Under this test the undisputed evidence in this case shows that appellee was only a licensee on appellant's train at the time he was injured. There was no possible benefit or advantage to appellant in his riding in on the log train, and appellee in his testimony says, in effect, that he took the log train because by so doing he could reach home earlier. On the evening of his injury he and a number of other sawyers got on this train at the suggestion of their foreman, and appellee says that he did not know that the employés had been forbidden to ride thereon; but he must have known from the character of the train and the fact that it did not run on any regular time that it was not provided by appellant for the purpose of taking the hands in from the woods. He testifies that he could not tell how many times he walked from his place of work to the corral and took the regular train there, or how many times he rode in on the log train. There is no testimony tending to show that appellant derived any benefit or advantage from its employés riding on the log train, or that it was under any obligation, express or implied, to carry them on said train.

We think it clear from the undisputed evidence that appellee was only a licensee on the train, and, under the authorities before cited, appellant owed him no duty in respect to the condition of its track and roadbed. This was the only ground of negligence submitted to the jury, and there is no evidence showing any negligence in operation of the train. It follows that appellant is not liable for the injury to appellee, and the trial court should have so instructed the jury.

Such being our conclusion, it is unnecessary for us to pass upon the remaining assignments of error presented in appellant's brief.

For the reason indicated, we are of opinion that the judgment of the court below should be reversed, and judgment here rendered in favor of appellant, and it has been so ordered.

Reversed and rendered.