Galveston, Harrisburg & San Antonio Railway Company
F. G. Courtney.

Decided December 3, 1902.

**1.—Assumed Risk—Railroad Brakeman—Uncoupling Cars.**

Where through the negligent act of an engineer in moving his train backward without a signal a brakeman was injured while engaged between the cars in uncoupling them by withdrawing the pin with his hands, and the evidence showed that there was no danger so long as the engineer, as required by his duty, did not move the train without a signal, the risk was not assumed, and the fact that the cars were provided with automatic levers for uncoupling did not affect the question. For the risk to have been assumed the circumstances must have been such that the brakeman must necessarily have known the danger.

**2.—Contributory Negligence—Question for Jury.**

Under all the evidence adduced in this case it is held that the question of contributory negligence on the part of a brakeman in uncoupling cars with his hands instead of using an automatic coupler, which was on the wrong side of the car and which he did not see, was properly one for determination by the jury, and not by the court as a matter of law.

**3.—Negligence—Engineer Moving Train Without Signal.**

Where it was the engineer's duty not to move the train, which was standing, without a signal, because of the resulting danger, his action in so moving it was negligence, regardless of whether or not he knew that the brakeman was between the cars using his hands and not the levers to uncouple them, since a reasonable probability of injury to the brakeman was sufficient to make it negligence to move the train.

**4.—Contributory Negligence—Pleading and Evidence.**

Where the defendant company had pleaded that plaintiff was guilty of contributory negligence in not using the automatic levers on the car it was permissible for plaintiff, as material to that issue, to prove that the levers were on the wrong side of the car, although he had not pleaded that fact.

**5.—Personal Injury—Verdict—Damages Held Not Excessive.**

A verdict for $11,000 held not excessive in the case of a brakeman 35 years old, earning $90 per month at the time of an injury to his arm which rendered it useless and subjected him to great pain and inconvenience, and so far injured his earning capacity that since then he only earned at another business less than four or five dollars per week.

Appeal from the District Court of Bexar County. Tried below before Hon. S. J. Brooks.

*Newton & Ward* and *Baker, Botts, Baker & Lovett,* for appellant.

*H. C. Carter* and *Perry J. Lewis,* for appellee.

JAMES, Chief Justice.—Appellee was a brakeman on one of appellant's freight trains, and sued for damages for injury to his left arm, which was caught between the bumpers of the cars in the act of uncoupling. The defendant pleaded assumed risk and contributory negligence. The verdict was for plaintiff for $13,000, which was reduced in the District Court to $11,000.

The train stopped at Macdona station in order to leave two cars there. It stood on a down grade towards the engine. It was in the night. The mode of detaching the cars was for the engine to pull the train up over the switch and stop in such a position that when the first car was uncoupled from the rear end of the train, it could be pulled forward over the switch and then backed into the side track, and when this was done, the engine pulled forward over the switch and backed on the main line and coupled up to the remainder of the train. The forward one of the cars had been taken off and the engine was coupled to the train and the train drawn forward, and the other car to be taken out, which was near the rear end of the train, was pulled up to the switch and stopped. The next work was to uncouple this car from the rear end of the train. In doing this work by attempting to uncouple the cars with his hand, plaintiff was caught and his arm crushed. There was evidence of the following facts: That the front part of the train was on a down grade towards the east, and could not by slack or otherwise have moved back, unless pushed backwards by the engine, and that the engine was moved backwards, and that this was the cause of plaintiff's injury. That while such work as being done the train was to be moved only on the signal from those doing the work. The train had stopped on the signal of plaintiff and another brakeman, Jordan, who were doing the uncoupling. The witnesses, including the engineer, testified that the engine after it stopped had no right to move whatever, except upon a signal from these brakemen, and Jordan and Courtney testified that neither of them gave the signal. If the engine had not moved as it did without a signal, it was perfectly safe and free from danger for plaintiff to make this uncoupling with his hands.

It was shown, however, that this car and the one from which it was to be detached were equipped with automatic uncoupling levers, in good working order, by means of which the work could have been done without danger. But it appears that the levers, or one of them at least, should have been on the right-hand side of the train (looking toward the engine) the side upon which these men were working, while both the levers on these cars were on the other side of the train.

Plaintiff testified that all cars are not equipped with these levers; that he did not know that there was a lever on the opposite side; that he looked for one where one ought to have been, and none being there he naturally supposed the cars had no levers, and then he went in to do the work with his hands. He testified also that he did not see the lever; that possibly he could have seen it if he had climbed upon the draw

bars to see it; that he didn't look for the lever after he got hold of the pin; he did not know whether there was one there or not; that he looked over ·the drawbars and saw the chain and part of ·the deadwood; the chain is attached to the lever; he didn't know whether the lever went clear out to the end of the car; he didn't look to see, but he could see the chain, and seeing the chain possibly was pretty good evidence that there was a lever somewhere about. It would indicate that there was a lever there, and he did see the chain, and instead of looking for that lever to see if it was there, he undertook to·pull the pin out with his hands.

Jordan testified that "the car to be set out was a box car which had a lever on the left-hand side of the rear end; there was no lever on the right-hand side where Courtney was going to uncouple it. I don't know why that flat car did not have a lever on the right-hand side; it had one on the left-hand side; * * * never saw both levers on the same side in my life before, nor have I seen it since, and I have been railroading longer than fourteen years." Just before plaintiff undertook to uncouple the cars he and Jordan had both been in between the cars (Jordan underneath the cars) engaged in detaching the air hose. The engineer testified: "We are supposed to move only when we are signaled to do so in switching,—simply obey signals. When two men are working to cut a train, one man fixes the air hose and one man uncouples, and the signal should come from one or other of these men; ordinarily the man doing the work is the one that indicates the signal to be given; this is for the purpose of keeping from mashing some one, so the signal will not be given until he is away; the engineer has no right whatever to move the engine without a signal from somebody; it would be improper; it would be dangerous to move without a signal in switching." Jordan testified among other things: "If the train stood still, I wouldn't take any chances; the only chance is that the rest of the crew will do something wrong; if they stand still and do right and only act on signals, there are no chances to take. In the absence of levers I have often pulled pins with my hand, raised it, standing still;" and again: "If that train was standing stock still there was no danger·in a man going in and lifting the pin with his hand; if it stood still it could not have hurt anybody. The danger in going in there was caused by the train unexpectedly backing up. If it had occurred while I was under the coupler separating the air hose, it might have caught me. I didn't expect it to come back."

The propositions under this assignment are that under the facts plaintiff as a matter of law assumed the risk of injury by doing the work with his hands instead of making use of the levers, and that his injury was the result of contributory negligence. The second assignment raises the same questions.

We think the court could not under the evidence have. treated these issues as conclusively established against appellant.

From the testimony it may have been found that the train came to a standstill and stood down hill toward the engine, and was therefore incapable of backing by reason of slack in the train; that there was no danger in going between the cars from a backward movement of the train, so long as the engine was not moved, and the engine was not to be moved except upon a signal from one of these brakemen. They both say no signal was given, and the evidence indicates that the engine moved backwards and caused plaintiff to be injured.

In order for a risk to be assumed the circumstances must be such that the injured party must necessarily have known of the danger. Railway v. Hannig, 91 Texas, 347. There was no danger whatever of his being injured by a backward movement of the train, so long as the engineer observed his duty, which plaintiff had a right to assume he would do. To charge plaintiff with notice of such danger, it would have to be held that he must have anticipated the engineer's negligent act. Under the above circumstances, if no signal was given, we think the danger created by the movement of the engine was not obvious so as to make plaintiff's act an assumed risk as a matter of law; and the fact that the cars were provided with levers would make no difference in this respect. Railway v. Gourley, 21 Texas Civ. App., 579.

Whether or not plaintiff, under all the conditions surrounding him, acted as a prudent man would have done, was a question for the jury, and the court did not err in refusing to. treat his act as negligence per se.

The seventh assignment is that the charge was erroneous in submitting as an issue whether or not it was the duty of plaintiff to go in between the cars to uncouple them with his hands, when there was no testimony justifying its submission, and because the uncontradicted evidence showed that it was not his duty to go in between the cars to uncouple them, but that it was his duty to use the levers, and was erroneous in ignoring the fact that these cars had these levers. This is the same point in another form.

The sixth assignment complains of the refusal of this charge: "A railroad is not required to abandon its equipment or apparatus on its cars because of later or newer inventions, although the same may be better than the old ones. It would not be negligence on the part of defendant to operate the cars in question with the Buckeye coupler because the Jenny coupler may be newer and better." Such issue was not one made by the pleadings, and it does not appear to have been made by the evidence, if we go by the evidence set forth in the statement contained in appellant's brief under this assignment.

Under the fourth and twelfth assignments appellant submits that because the cars had levers, the engineer had a right to rely upon plaintiff using them, and unless the engineer knew that plaintiff was going in to uncouple the cars with his hands, he was not guilty of any negligence by backing the train. The engineer himself testified: "We are sup-

posed to move only when we are signaled to do so in switching; simply obey signals. When two men are working to cut a train, one man fixes the air hose and one man uncouples, and the signal should come from one or the other of these men; ordinarily the man doing the work is the one that indicates the signal to be given; that is for the purpose of keeping from mashing some one so the signal will not be given until he is away; the engineer has no right whatever to move the engine without a signal from somebody; it would be improper; might result in hurting some one; it would be dangerous to move without a signal in switching." So long as he had no signal, it meant to him that it was dangerous, to the persons at work, for him to move the engine. The reasonable probability of injury to such persons, in some way, by moving the engine was sufficient to make it negligence to move it.

Appellant insists that the engineer had a right to rely upon the presumption that in attempting to uncouple the cars plaintiff would use the levers, and if the engineer did not know that plaintiff was going to ignore the levers and was going in between the cars to uncouple them with his hands he was not guilty of negligence. We think it would be more correct to say that plaintiff had a right, in doing his work, to act upon the presumption that the engine would not be moved without the signal.

The third assignment relates to a refused charge by which it was sought to have the jury instructed not to consider any evidence that the levers were on the wrong side of the car, etc., because plaintiff had not alleged this in his pleading. Defendant raised the question of contributory negligence, etc., and this evidence was proper as material to that issue. The fifth assignment is similar, and alleges further that plaintiff had not pleaded that when the engineer moved the engine back upon plaintiff he knew plaintiff was between the cars. It was not necessary that he should have known this to make his moving the engine negligence.

The charge complained of in the eighth assignment does not assume any facts. Railway v. Lehmberg, 75 Texas, 61. As a matter of fact the petition did allege and it was in proof that the train was set in motion without a signal. The other objections to the particular charge have in effect been disposed of by what has already been stated. There is nothing in the ninth assignment, because there was evidence that the train was backed without a signal.

We do not feel able to say that the verdict is excessive. The usefulness of plaintiff's arm and hand is permanently destroyed, and physicians testified that he would be better off if the arm were amputated. He suffers great pain and inconvenience from it, particularly in changeable weather. One of the physicians testified that growing age would affect an injury of that kind; that it would grow more sensitive. Plaintiff was 34 years old and earning from $85 to $90 per month. Since his injury he has been driving a laundry wagon, getting a com-

mission on work he might secure, which was between $4 and $5 a week, and out of his commission he made good all unpaid or bad bills. The verdict is large, but we can give no good reason for requiring a remittitur. Railway v. Bohan, 47 S. W. Rep., 1050. The judgment is affirmed.

*Affirmed.*

Writ of error refused.