FREEMAN et al. v. McELROY.

(Court of Civil Appeals of Texas. San Antonio. May 29, 1912. On Motion for Rehearing, June 26, 1912.)

1. JURY (§ 114*) — CHALLENGE TO ARRAY — SUFFICIENCY.

A motion to quash the jury panel must be deemed a challenge to the array, though not expressly purporting to be such.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 541–550; Dec. Dig. § 114.*]

2. JURY (§ 114*)—CHALLENGE TO ARRAY—IRREGULARITY IN IMPANELING JURORS.

Under Rev. St. 1895, art. 3202, authorizing challenge to an array of jurors where the officer summoning them has acted corruptly, etc., and article 3203, which prohibits challenge to an array where the jurors have been selected by jury commissioners under title 62, it is not ground for such challenge that 10 names were taken from the jury wheel at a time, where the names were written down in the order in which they were taken out, nor that some of the jurors were not summoned in person, notice being mailed to them, where 35 regular jurors obeyed summons and the court excused for good cause down to 24, who were regularly impaneled, and where no challenges were made for cause.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 541–550; Dec. Dig. § 114.*]

3. JUDGES (§ 48*) — DISQUALIFICATION — SELECTION OF JURORS.

A district judge was not disqualified to pass upon a motion to quash the panel of jurors because it involved the legality of his own act in selecting a jury.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 220, 221; Dec. Dig. § 48.*]

4. RAILROADS (§ 271*)—ACTIONS—EVIDENCE—MATERIALITY.

Where, during pendency of a personal injury suit against a railroad receiver, the company's property was sold to a new corporation, subject to the receiver's liabilities, and the new corporation was made a party defendant, its charter and deed from the receiver to the new corporation were properly admitted in evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 866; Dec. Dig. § 271.*]

5. RECEIVERS (§ 168*)—SUITS AGAINST—DISCHARGE OF RECEIVER—EFFECT.

Where a personal injury suit was brought against a railroad receiver, he was not a necessary party after his discharge and a sale of the company's property to a new corporation subject to the receiver's liabilities, but a motion for verdict in his favor was properly overruled where it was not based on the fact that he had been discharged, since an allowance of the motion might have been construed as a finding on the merits, and since it was necessary to establish liability against the receiver as a prerequisite judgment against his codefendant, the new corporation.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 321, 322; Dec. Dig. § 168.*]

6. RAILROADS (§ 282*)—OPERATION—FRIGHTENING HORSES—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against a railroad company for personal injury resulting from plaintiff's team taking fright while it was standing near defendant's baggageroom, evidence held to show that the team was left untied and unguarded in a public place.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

7. EVIDENCE (§§ 10, 22*)—JUDICIAL NOTICE.

The Court of Civil Appeals can take judicial notice of the location of the line of a railroad, but it is doubtful if it can take notice of the limits of a city or of the location of a depot.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 9–14, 26–28; Dec. Dig. §§ 10, 22.*]

8. RAILROADS (§ 282*)—OPERATION—FRIGHTENING TEAMS — PROXIMATE CAUSE — EVIDENCE.

In an action against a railroad company for personal injury resulting from plaintiff's team taking fright at a noise suddenly created by defendant's baggagemaster in opening a metallic door, evidence held to warrant a finding that the baggagemaster's negligence, and not plaintiff's negligence in leaving his team untied, was the proximate cause of the injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

9. RAILROADS (§ 282*)—OPERATION—FRIGHTENING HORSES—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

In an action against a railroad company for injuries to plaintiff caused by his team taking fright at a noise suddenly created by defendant's baggagemaster in raising a metallic door, whether plaintiff was guilty of contributory negligence held, under the evidence, a jury question.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

10. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL—MATTER COVERED.

An instruction covered by one given is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

11. RAILROADS (§ 282*).—OPERATION—FRIGHTENING HORSES—INSTRUCTIONS.

In an action against a railroad company for injury to plaintiff through his team taking fright when defendant's baggagemaster suddenly created a noise by raising a metallic door, an instruction to find for defendant if plaintiff knew the door made a noise when raised, and left his horses unguarded and unhitched with their heads opposite the door, was properly refused as taking from the jury the questions whether plaintiff's acts were negligent and the proximate cause of the injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

12. TRIAL (§ 253*)—INSTRUCTIONS.

In an action against a railroad company for personal injury caused by plaintiff's horses taking fright at a noise suddenly created by defendant's baggagemaster in raising a metallic door, an instruction that if plaintiff left his team unguarded and unhitched at a public place that was negligence per se, and he could not recover, was properly refused as ignoring the question whether such acts contributed to the injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

13. APPEAL AND ERROR (§ 1149*) — DISPOSITION—REFORMATION OF JUDGMENT.

Error in awarding judgment against a receiver who had been discharged can be corrected on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. § 1149.*]

14. RAILROADS (§ 282*).—OPERATION—FRIGHTENING HORSES—EVIDENCE—ADMISSIBILITY.

In an action against a railroad company for injury caused by plaintiff's horses taking

fright by a noise created by defendant's baggagemaster in raising a metallic door, evidence that plaintiff asked the baggageman to wait until he could get to his wagon before raising the door was properly admitted on an issue whether his acts directly caused the injury, as against objection that the evidence was immaterial and irrelevant.

[Ed. Note.—For other cases, see Railroads, ·Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

15. TRIAL (§ 233*)—SUBMISSION OF ISSUES—REFERENCE TO PLEADINGS.

In a personal injury action, it was not reversible error to refer the jury to defendant's pleadings to ascertain what acts of contributory negligence were charged where the answers were not involved or technical, and where, taking all the instructions together, there was a fair submission of the issues, especially in the absence of a request for more specific submission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 527–530; Dec. Dig. § 233.*]

16. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR — INSUFFICIENT PRESENTATION.

An assignment of error which is not in itself a proposition and under which no proposition is stated should not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

17. DAMAGES (§ 132*) — PERSONAL INJURY—EXCESSIVENESS.

Fifteen thousand dollars was not excessive ·recovery for personal injury to a teamster 47 years old whose left leg was so badly crushed that it had to be amputated just below the knee, where he had been strong and in good health, and had earned $60 per month.

[Ed. Note.—For other cases, see Damages, ·Cent. Dig. §§ 178, 372–385, 396; Dec. Dig. § 132.*]

18. APPEAL AND ERROR (§ 1001*)—REVIEW—SUFFICIENCY OF EVIDENCE.

A judgment for plaintiff in a personal injury action cannot be said not to be supported ·by evidence because there is no evidence of any impaired earning capacity.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

19. APPEAL AND ERROR (§ 742*)—REVIEW—INSUFFICIENT BRIEF.

An assignment of error not briefed according to the rules of the appellate court should not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

20. APPEAL AND ERROR (§ 741*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error to the refusal of a motion for a new trial based on several grounds is not properly reviewable where it is submitted as a proposition itself.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3037, 3038; Dec. Dig. § 741.*]

21. APPEAL AND ERROR (§ 200*)—OBJECTIONS TO JURORS.

Objection that a juror was not competent because he could not read and write the English language comes too late after verdict.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 200.*]

22. NEW TRIAL (§ 44*)—MISCONDUCT OF JURY.

In a personal injury action, it was not an abuse of discretion to refuse defendant a new trial asked on the ground of misconduct of a juror during the argument when counsel for plaintiff asked whose fault it was that plaintiff was injured in answering that it was defendant's fault, where he supposed that the question was addressed to him, and it does not appear that his remark influenced the other jurors, or on the ground of misconduct of jurors in discussing whether plaintiff had a family, where the foreman promptly stopped the discussion, which did not disclose whether plaintiff had a large or small family, but merely that he had a grown son or son-in-law, or on the ground of misconduct in discussing the possibility of plaintiff losing his position, where that discussion was very brief and some of the jurors did not hear it, or because one or two of the jurors noticed newspaper articles referring to the trial, where it does not appear that any juror actually read the articles, and where all the jurors denied that they were influenced thereby or by any of the other irregularities.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85; Dec. Dig. § 44.*]

## On Motion for Rehearing.

23. APPEAL AND ERROR (§ 1002*)—REVIEW—VERDICT—CONCLUSIVENESS.

A jury's finding on conflicting evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 3935–3937; Dec.Dig. § 1002.*]

24. MUNICIPAL CORPORATIONS (§ 120*)—ORDINANCE—EFFECT.

Where an ordinance introduced in evidence, in force at the date of its introduction, prohibited a certain act, it has no prima facie effect, unless it is shown to have been passed ·by the party offering it prior to the commission of the act.

[Ed. Note.—For other cases, see Municipal Corporations, Cent.Dig. §§ 274–280; Dec.Dig. § 120.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by Isaac McElroy against T. J. Freeman, Receiver, and another. Judgment for plaintiff, and defendants appeal. Reformed and affirmed.

Wilson & Dabney, of Houston, and Cobbs, Eskridge & Cobbs, of San Antonio, for appellants. H. C. Carter and Perry J. Lewis, both of San Antonio, for appellee.

MOURSUND, J. Appellee sued T. J. Freeman, receiver of International & Great Northern Railroad, for $20,000 damages alleged to have been suffered by him by reason of the negligence of a baggagemaster employed by said Freeman. During pendency of the suit, the properties of the ·International & Great Northern Railroad Company were sold under order of the federal court, and were bought in by Mr. Nicodemus. The International & Great Northern Railway Company was chartered under what is known as the International & Great Northern law, for the purpose of taking over, owning, and operating the properties, franchises, and railroads of the International & Great Northern Railroad Company. Thereupon plaintiff amended, setting up such facts and making said railway company a party defendant.

The negligence charged was that the baggagemaster, without waiting for defendant to reach his horses, and in spite of his re-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

quest to so wait, quickly raised an iron or metal door, thereby creating a loud, harsh, rasping, metallic noise, which, together with the fact that said door was suddenly and quickly thrown up, caused plaintiff's said horses to become frightened and run away, throwing plaintiff out of his wagon. That, being run over by the wagon, his left leg was so badly crushed it had to be amputated just below the knee.

Defendants filed general demurrer, special exceptions, general denial, pleaded the city ordinance prohibiting the leaving of a team unless it was securely tied, that plaintiff was guilty of negligence in failing to use ordinary care for his own safety, and in getting into the wagon after the horses had begun to run away, and that he created a new and independent cause which directly produced the injury by climbing into the wagon which was rapidly moving; that he knew the manner in which the doors were constructed, and that they were liable to be opened at any time; that there was no place where hitching posts could be maintained, but there were substantial posts near by to hitch horses. That he was further guilty of negligence in not having a weight and cord with which to tie his horses, and in not loosening the traces. Appellant Freeman pleaded specially his appointment and discharge as receiver, the incorporation of the International & Great Northern Railway Company, and its acquisition of the properties held by him as receiver.

The case was tried before a jury and verdict returned in favor of plaintiff for $15,000. Judgment was entered for said amount with 6 per cent. interest from November 11, 1911, against T. J. Freeman, receiver of the International & Great Northern Railroad Company, and against the International & Great Northern Railway Company, and the same was declared to be a lien and charge upon all the properties, railroad, and franchises of said International & Great Northern Railroad Company now in the hands of said International & Great Northern Railway Company. It provided for execution and such other appropriate writs as may be necessary to enforce the judgment. Defendants perfected appeal.

### Findings of Fact.

Appellee, at the time of the trial, was 47 years old, strong and in good health, and was employed by the San Antonio Drug Company at a salary of $60 per month. He had worked for such company 25 years. At the time of the injury, viz., January 27, 1909, he was driving a team and had gone to the International & Great Northern depot to get four trunks. The baggageroom had three iron doors which rolled up when being opened, and made a loud rasping noise. He stopped his team by the side of the baggage platform, with the wagon in the vicinity of the first door, and the horses' heads near the second door. He looked for a place to tie his team, but found none, and there was none in fact at such baggage platform. There were some iron posts some distance away, put there to protect a small park and sidewalks, to which people sometimes tied, but it was also in evidence that officers had made people untie from the same. Appellee testified he did not notice such posts. The baggage platform was the place set apart and designated for the purpose of procuring and delivering baggage, and it was customary for people to load and unload without tying their teams, but usually they backed up to the platform instead of driving alongside of it as was done by appellee. Appellee did not tie his team in any manner, nor drop the traces, nor leave any one in charge of same, but fastened the lines to the standard of the wagon, which was afloat. The bed of the wagon was about the same height as the platform. This was his first trip to said baggageroom since the new depot had been built, and he did not know how noisy the doors were when being opened, but had heard some talk of a door making a noise and supposed it to be the baggageroom door. He knew it was a violation of the city ordinance to leave a team untied on the streets, but did not know it was a violation of such an ordinance to leave them at this place. The team was gentle and was used to standing untied in public places, and would not scare for automobiles, trains, or street cars. It had been used by said company for six or seven years, and had only tried to run away once, which was some six years before this time, and was caused by a wagon turning over right at them, with its contents falling around and against them. They would obey appellee's voice, and at his command take their places at the wagon.

The south door of the baggageroom was open, and the next one closed. There was no one else there getting or delivering trunks just at that time. Appellee entered the baggageroom through the south door, presented his checks, and found his trunks. His testimony and that of the baggagemaster is conflicting as to what occurred thereafter, but, for the purposes of this appeal, we must resolve the conflicts in appellee's favor. He testified that the trunks could have been taken out of the south door, and he was going to bring them out of said door. He could see the wagon from where he stood, the trunks were in a line from the north door to the south, and he stood south of them. He was about 15 to 20 feet from the wagon. The baggagemaster took the checks off the trunk, and walked to the north door and stood there with his hand on the chain, which rattled. Appellee supposed he was going to open the door, and asked him not to do so until he got to his wagon; then walked out of the south door pretty fast. He was in a hurry. The wagon had side

boards, but the board was out. The wagon was standing still. The lines were over the seat on the standard on the left-hand side, the same side he was on. "They were tied over the seat, the front part." He was as far forward as the seat, between the front and hind wheels, and had one hand on the seat, the other on the post the lines were on, and one foot on the edge of the wagon. He was more on the wagon than on the platform, was balanced towards the wagon. Just then the baggagemaster threw up the door, making a very loud noise. The horses got scared and ran. He held to the back part of the seat and tried to get on the wagon to keep from falling backwards, and caught the lines just as he was falling. That he fell about 20 feet from the baggageroom. At one place he said he did not make any effort to get hold of the lines when the horses started, at another that he had one hand on the lines. The horses ran in a curve, pretty fast. The witness Banks saw what happened when appellee got to his team. He said he knew appellee got the lines with one hand, and they ran in a curve. Appellee testified the team would not have run off if he had been on the wagon with the lines in his hand to speak to them.

There was an ordinance of the city of San Antonio in force making it an offense punishable by fine to leave any vehicle alone in any plaza, street, avenue, lane, alley, or other public place, unless left in charge of some competent person over the age of 14 years or securely tied to some suitable or immovable object.

The evidence shows that T. J. Freeman was receiver of the International & Great Northern Railroad at the time appellee was injured, but was discharged, by the court appointing him, before the trial of the case. The conveyance of all the properties, franchises, and the railroad of the International & Great Northern Railroad Company to the International & Great Northern Railway Company was introduced in evidence, also the charter of the latter company, showing that it was created for the purpose of taking over said railroad, properties, and franchises, in pursuance of the law, approved September 1, 1910, commonly known as the International & Great Northern bill.

The evidence taken on the motion for new trial will be discussed under the assignment raising the issue of misconduct of the jury.

### Conclusions of Law.

[1, 2] By the first assignment of error appellants complain because the court overruled their motion to quash the panel of jurors. It will not be necessary to copy the three propositions under this assignment. The grounds set up in the motion were: (1) That the panel was not drawn out of the jury wheel one by one, and the names written down under the direction of the judge; that said names were drawn in batches of two or more, and some were not written down and did not appear on the list. (2) That said jurors were not summoned in the manner provided by law; no personal service being had upon many.

It appears from the qualification to the bill of exceptions that 35 regular jurors appeared in answer to the summons, and the court excused for good cause down to 24, who were regularly impaneled. That these 24 were separately and individually examined and tested by both plaintiff and defendants upon their "voir dire," and were competent and qualified jurors, and no challenges were made for cause, and the jury which tried the case was selected from said 24 men. Therefore the defendants' motion, while it did not expressly purport to be a challenge to the array, must be considered as such a challenge.

Section 4 of the jury wheel law (Acts 30th Leg. c. 139) reads as follows: "Not less than ten days prior to the first day of a term of court, the clerk of the district court, or one of his deputies, and the sheriff, or one of his deputies, in the presence and under the direction of the district judge, if jurors are to be drawn for the district court, or the clerk of the county court, or one of his deputies, and the sheriff, or one of his deputies, in the presence and under the direction of the county judge, if jurors are to be drawn for the county court, shall draw from the wheel containing the names of jurors, after the same has been well turned so that the cards therein are thoroughly mixed, one by one the names of thirty-six jurors, or a great-'er or less number where such judge has so directed for each week of the term of the district or county courts for which a jury may be required, and shall record such names as they are drawn upon as many separate sheets of paper as there are weeks for such term or terms, for which jurors will be required, and at such drawing no person other than those above named shall be permitted to be present, and the officers attending such drawing shall not divulge the name of any person that may be drawn as a juror to any person."

This section, in the manner of drawing the names, has great similarity with Rev. St. 1895, art. 3159, providing for selection of juries by jury commissioners, which reads as follows: "The names of the persons so written and folded shall be deposited in a box, and after being well shaken and mixed, the commissioners shall draw therefrom the names, one by one, of thirty-six persons, or a greater or less number where the judge has so directed, for each week of the term of the district court or terms of the county court for which a jury may be required, and shall record such names as they are drawn upon as many separate sheets of paper as there are weeks of such terms for which juries will be required."

The jury wheel law has no clause to the effect that failure to comply with any of its provisions shall be cause for challenge to the array, and we must go to the former law

for a rule on that subject, which we find in article 3202, reading as follows: "Any party to a suit which is to be tried by a jury may, before the jury is drawn, challenge the array of jurors upon making it to appear that the officer summoning the jury has acted corruptly, and has willfully summoned jurors known to be prejudiced against the party challenging or biased in favor of the adverse party."

Article 3203 makes the further restriction that no challenge to the array shall be entertained where the jurors have been selected by jury commissioners under the provisions of title 62. The motion in this case does not allege the statutory ground for a challenge to the array. The latter portion only relates to the summoning of the jury, and does not charge anything further than that the sheriff did not summon the jury in the manner provided by law. The evidence taken on this motion also fails to justify a challenge to the array. It appears that several, perhaps as many as 10, names were, for convenience sake, taken out of the wheel at a time, but were written down in the order in which taken out. That they did not refuse to put down any man's name, but, when the list for the week was completed, would put back in the wheels any names left over. The jury were nearly all summoned in person. All those in the city were summoned in person, but notice was mailed to six or seven in the country, of whom one was excused and one or two attended. Thirty-five regular jurors obeyed summons.

We are of the opinion it was never contemplated that a challenge to the array should be sustained for every slight irregularity. If jury commissioners had taken out six or seven names at a time and written them down in the order they were drawn, clearly under articles 3202 and 3203 no challenge to the array could be made. Roundtree v. Gilroy, 57 Tex. 176; C., H. & S. A. Ry. Co. v. Worth, 53 Tex. Civ. App. 351, 116 S. W. 369; Hayward Lumber Co. v. Cox, 104 S. W. 404; Freeman v. Wilson, decided by this court and not yet reported.

While article 3203 does not apply to jurors selected by use of the wheel, yet article 3202 does so apply in the absence of any provision in the jury wheel law on the subject, and limits the grounds of challenge to cases where the officer summoning same has acted corruptly and has willfully summoned jurors known to be prejudiced against the party challenging or biased in favor of the adverse party. No such ground being alleged or proven, the motion was properly overruled. Nor do we find that appellant suffered any injury by reason of the manner of selecting and summoning the jury. It is true that appellant in his motion for new trial alleged misconduct of the jury, and evidence was heard, but such evidence, in our opinion, failed to show any misconduct which affected the verdict, or anything which might not have happened with respect to any ordinary jury.

[3] The second assignment of error is to the effect that the court erred in refusing to transfer the motion considered under first assignment to one of the other district courts of Bexar county. The contention is that, the court's own act in selecting the jury being attacked, he was disqualified to pass upon the legality of such act. We do not think the court was disqualified to pass on such motion. If he was, then he would have no right to make even an order transferring it to another court. The assignment is overruled.

By the third assignment, appellants complain because the court overruled defendants' general demurrer, and by the fourth to the ninth, inclusive, because certain special exceptions were overruled. We have examined the pleadings and are of the opinion that the demurrer and exceptions were properly overruled, wherefore said assignments are overruled.

[4] The tenth assignment questions the admissibility in evidence of the charter of the International & Great Northern Railway Company, over the objections that it was immaterial and irrelevant to any issue in the cause. The charter shows that said company was organized to take over the properties and operate the railroad of the International & Great Northern Railroad Company. Under the pleadings, and in view of the fact that the new company took the franchises and properties of the old company subject to and charged with the liabilities of the receiver, this evidence was clearly relevant and material. The deed from the receiver to the International & Great Northern Railway Company conveying the franchises and properties of the International & Great Northern Railroad Company was also material, and the eleventh assignment, which complains of its admission, is also overruled.

[5] By the twelfth assignment, appellant complains because the court overruled the motion filed by defendant Freeman, receiver, to instruct a verdict in his favor. It is true that Freeman had been discharged, but the motion was not put upon that ground, and reads as follows: "Now comes the defendant, T. J. Freeman, receiver, and asks the court to instruct the jury to find a verdict in favor of this defendant." We think the court was correct in overruling this motion. The suit was instituted against Freeman, as receiver. If a liability existed on his part as receiver at the time of the suit, and was unsatisfied at the time the property and franchises passed to his codefendant charged with his liabilities, then it was necessary to establish such liability against him as a prerequisite to a judgment against his codefendant. A general verdict for him would have at once been construed as a judicial deter-

mination that no liability existed. We do not think he was a necessary party to the suit after his discharge, but should have taken such steps to secure an abatement of the suit as to him as would not have carried by implication the idea that the finding was upon the merits of the cause of action. The court correctly overruled the motion as made.

[6-9] The thirteenth and fourteenth assignments are submitted together; one is a complaint because the court overruled the motion of the International & Great Northern Railway Company to instruct a verdict in its favor, and the other because the court refused a special charge to find in favor of said company. In connection with these assignments we will consider the twenty-fourth, twenty-fifth, twenty-sixth, and twenty-ninth assignments, which attack the verdict on the ground of insufficiency of evidence. The following, briefly stated, are the issues raised by said assignments: (1) It was not shown that any acts of the defendants were the direct and proximate cause of plaintiff's injuries. (2) The plaintiff was guilty of contributory negligence in leaving his team unhitched and unguarded in a public place, within the corporate limits of San Antonio. (3) The plaintiff knew the door made a noise when raised, and that the door was closed when he drove his team up to same and left it unhitched and unguarded, and knew it might be raised at any time from the inside, and therefore he assumed the risk. (4) Plaintiff was guilty of contributory negligence in not going in front of the horses to hold them, and in getting into the wagon without first getting the lines. In our opinion the evidence is sufficient to show the team was left untied and unguarded in a public place. Pratt v. Brown, 80 Tex. 613, 16 S. W. 443; Murchison v. State, 24 Tex. App. 8, 5 S. W. 508. The evidence tending to show such place to be in the city limits is very weak, and we doubt whether we can judicially take notice of such limits and of the location of said depot, though we can take judicial notice of the location of the line of railroad.

Aside from the ordinance, we do not think the facts show negligence per se with reference to leaving the team untied, because they show what it was customary for people to do with reference to leaving teams there, and show no more than any ordinarily prudent man would have done. But conceding that the ordinance was violated, and that leaving the team untied for that reason constituted negligence, then it remains to fix the liability for the injury. We have then a certain condition brought about by plaintiff's negligence. Defendant is about to open a door which makes a great deal of noise. Plaintiff tells him not to do so until he can get to his team, and hastens out. In this case appellants say the baggagemaster did

not have knowledge of plaintiff's peril because he could not see the horses, and was not told they were untied or unattended. However, he knew that plaintiff had come there before by himself, prior to the building of the new depot; he knew that drivers of vehicles coming after baggage usually left their teams untied, and that there was no place to tie at the platform. He was told to wait until plaintiff could get to his team, and he saw plaintiff hurry out. There was no rush of business, and plaintiff was the only one getting trunks. He could easily have stepped to the open door and seen what condition the team was in, but instead he rolled up the door without waiting to see that everything was all right, and without calling to plaintiff to ascertain whether he was ready, and without waiting for plaintiff to call to him. He certainly had knowledge that the team required attention before he opened the door, and the mere fact that he was not actually cognizant of all the details of the situation should not justify him in engaging in an act of negligence with reference thereto. Knowing that a team is in such condition that a man must get to it before a certain noise is created, the baggagemaster neglects to use ordinary care to let the man get to same before creating such noise. Can he thus take advantage of plaintiff's carelessness and inflict injury without liability for the same? We think not. Negligence under the circumstances amounts to willful negligence.

We think the plaintiff's testimony in this case makes a stronger case than those cases where it is held that the known use of a railroad track at a certain place by pedestrians places the duty upon the railroad company of using ordinary care to discover them and to avoid injury to them. Such cases have been held to make an exception to the rule requiring actual knowledge on the part of the company of the peril of the trespasser. Railway v. Malone, 102 Tex. 269, 115 S. W. 1158; Railway v. Broomhead, 140 S. W. 822. In the present case, the usage of leaving teams untied was known to the baggagemaster, and in addition he was notified that the team required the presence of plaintiff before the door was opened.

We are of the opinion that plaintiff's negligence in leaving his team untied was not the proximate cause of the injury. The team was caused to run by reason of the negligent act of the baggagemaster in opening the door when he did. We will therefore consider the question whether the evidence shows that plaintiff was guilty of negligence proximately contributing to his injury, after telling the baggagemaster to wait until he got to his team. Appellant urges that plaintiff should have gone to the heads of his horses and held them. We are not prepared to say that a man of ordinary prudence would have chosen such method as less dangerous

than to try to get in the wagon. Again appellant says he should have taken the lines and not tried to get in the wagon. Plaintiff knew his team and believed they would not run away if he was in the wagon and had hold of the lines. He owed the duty to his employers to take care of their property. He chose the method of getting in the vehicle, which in many instances would be the best, because when on the ground or platform they might get entirely away from him, while if in the wagon they might be checked after making a little run. The evidence does not disclose whether the vehicle had a brake. The lines were in some way fastened to the standard, and plaintiff took hold of the standard with one hand and of the seat with the other. He was in a hurry, and did not have time to study which was the safer method, as we now have. He had a right to expect that the baggagemaster would give him sufficient time. It does not appear that the condition would have been improved had he had the lines in one hand and had hold of the vehicle with the other. In either event, he could have had his weight balanced towards the wagon, and when the jerk came, having the lines in one hand, unless he hurriedly caught with it, he would have been thrown quicker than he was. The evidence does not show conclusively that he could have stepped back to safety because he was balanced towards the wagon, and when the team suddenly started he may have had no time to step back. We cannot say, as a matter of law, that an ordinarily prudent man would not have done exactly as plaintiff did. "Contributory negligence is ordinarily a question of fact, and the cases are of very rare occurrence which justify a trial court in withholding such question from the jury." Texas Mexican Ry. Co. v. Higgins, 44 Tex. Civ. App. 523, 99 S. W. 202. See, also, Railway Co. v. Courtney, 30 Tex. Civ. App. 544, 71 S. W. 307; Texas & N. O. Ry. Co. v. Conway, 44 Tex. Civ. App. 68, 98 S. W. 1072; Marshall & E. T. Ry. v. Petty, 145 S. W. 1197; Lee v. I. & G. N. Ry. Co., 89 Tex. 588, 36 S. W. 63.

The evidence was sufficient to go to the jury and to sustain their verdict, wherefore all of said assignments are overruled.

[10, 11] The fifteenth assignment complains because the court refused to give special charge No. 2 as follows: "If you find from the evidence in this case that the plaintiff, Isaac McElroy, knew that the baggageroom door made a noise when being raised and that he left his team with the horses' heads opposite said door unguarded and unhitched, you will find for the defendants." The proposition is: "There being evidence to show that the baggage door made a noise and he left his horses unsecured, this issue should have been submitted to the jury; it nowhere was done or covered in the general charge, as the proximate cause of the injury, and went to the question of his contributory negligence as assuming the risk."

The court gave two special charges at defendants' request, viz.: "If you believe from the evidence in this case that the plaintiff, Isaac McElroy, left his team unguarded and unhitched in a public place in the city of San Antonio, and that so leaving said team contributed to and produced the injuries sustained by the said McElroy, in such event the said McElroy would not be entitled to recover in this case, and you will find a verdict for the defendants." "You are instructed that, if you believe the team driven by the plaintiff was a runaway team and that plaintiff knew such fact, if it was a fact, and that he left said team unguarded and unhitched, and if you further believe that such action of the plaintiff was negligence and such negligence, if any, contributed to or was the proximate cause of the injuries, if any, your verdict should be for defendants."

The special charge No. 2 was properly refused in view of the charges given, and of the further fact that it did not leave it to the jury to determine whether such acts constituted negligence and whether the same were the proximate cause of the injury. The proposition virtually admits that the charge as offered was incomplete in the respects mentioned.

[12] The sixteenth assignment is: "If you believe from the evidence in this case that the plaintiff, Isaac McElroy, left his team unguarded and unhitched at a public place in the city of San Antonio, then you are instructed that such act was negligence per se and said plaintiff would not be entitled to recover in this case, and your verdict should be for the defendants." The proposition is: "It was negligence to leave the horses hitched to a vehicle in the city of San Antonio without securing them safely and to leave them so unsecured." Said proposition is rather broad, as it leaves out the question of whether a public place or not. However, we do not think the charge should have been given. It leaves out the issue whether such acts contributed to the injury. Special charge No. 5, copied under preceding assignment, submitted the issue more correctly than the charge now being considered. The assignment is overruled.

[13] The seventeenth assignment, in effect, is that the court erred in refusing to instruct a verdict for T. J. Freeman, receiver, the eighteenth that the court erred in rendering judgment against him; the reason set out in each assignment being the fact of his discharge. The nineteenth assignment is that the court erred in rendering judgment against the defendants because the verdict was a general verdict against both, and, the receiver having pleaded and proved his discharge, no judgment could be rendered upon said verdict. Freeman having been

discharged, judgment should not have been rendered against him, but this is an error which can be corrected in this court. The verdict was sufficient under the facts to authorize judgment against the International & Great Northern Railway Company.

[14] The twentieth assignment reads as follows: "The court erred in overruling defendants' objections and in admitting in evidence the testimony of the plaintiff to the effect 'that he went into the baggageroom and presented his checks to the baggageman and that, while he was in the baggageroom, he asked the baggageman to wait a minute until he could get to his wagon, and that the baggageman pulled the door,' because said evidence was immaterial and irrelevant; the act of said baggageman not being the direct and proximate cause of the injuries sustained by plaintiff, all of which is shown more fully by defendants' bill of exceptions No. 4."

The proposition is that plaintiff's act was a violation of a city ordinance, and therefore it mattered not whether the baggageman complied with his request. No such objection was made to the evidence as shown by the assignment, and the objections made were clearly not tenable. It was for the jury to determine whether the acts of the baggagemaster were the direct and proximate cause of the injuries, and to do so they were entitled to consider said evidence.

The twenty-first assignment is a complaint of the general charge because it groups in a lengthy paragraph the different facts which the jury must find before plaintiff car recover. Appellants, in their first proposition, say such charge is rendered confusing and meaningless to the jury, except that plaintiff's facts are grouped for them. We do not think this proposition can be sustained. The second proposition in effect is that such a charge presents only portions of the testimony, and that in fact the same is a discussion of the weight of testimony in picking out and emphasizing what the court presents as the salient features. The objection is not tenable; the court cannot submit all the evidence, and necessarily must submit the questions made by the pleadings and evidence. Necessarily it emphasizes the things mentioned, but in our judgment does not have any tendency to give the jury the idea that the facts have been proven. The third proposition is that the charge was erroneous in submitting the right of appellee for recovery to depend upon the sole question whether it was negligence to have raised the door, and that such act directly caused plaintiff's injury, because the raising of the door was not the proximate cause of the injury, nor an intervening causation, and because the proximate cause was leaving the team unsecured, and plaintiff's attempt to stop them by jumping in the wagon to secure the lines. We think the issues thus presented by appellant in his proposition were proper for the jury

to pass on, and that the charge was not objectionable. The contention amounts to a theory that, as a matter of law, the raising of the door was not the proximate cause, and that for such reason the charge was erroneous. This contention has been disposed of under the thirteenth and other assignments. The assignment is overruled.

[15] The twenty-second assignment is: "The court erred in the second paragraph of his charge, which is as follows, to wit: 'If you believe from the evidence that the plaintiff was guilty of negligence, as alleged by the defendant, and that such negligence proximately contributed to produce his injury, if any, then the plaintiff cannot recover, and you will find your verdict for the defendant. By negligence, as used in this charge, is meant the failure to use ordinary care; by ordinary care is meant such care as a person of ordinary prudence would have used under the same or similar circumstances.' " Six propositions are submitted under this assignment. The first five present various objections, which, taken together, amount to this: That it was error to refer the jury to the defendants' pleadings to ascertain what acts of negligence plaintiff was charged with as contributing to the injury, instead of presenting such questions fully as was done with respect to plaintiff's theory. The sixth proposition is as follows: "It was error not to explain in this case what would constitute negligence on the part of plaintiff, what the proximate cause, what the intervening casualty, and how defendants' right should be affected thereby."

It has been held that, in a charge on contributory negligence, a direct reference to the pleadings to ascertain the nature of defenses is not reversible error, though not to be commended as a practice. Railway v. Tankersley, 63 Tex. 60. See, also, Railway Co. v. Hitzfelder, 24 Tex. Civ. App. 320, 66 S. W. 707; Railway Co. v. Hay, 39 Tex. Civ. App. 52, 86 S. W. 954; Railway Co. v. Kelly, 98 Tex. 136, 80 S. W. 79. It has, however, been suggested in the case of Bering Mfg. Co. v. Femelat, 35 Tex. Civ. App. 36, 79 S. W. 872, that, where pleadings referred to are so involved and technical as to render it doubtful whether the jury could clearly understand the issues presented, the charge referring to same for issues of fact would require a reversal, citing Bradshaw v. Mayfield, 24 Tex. 482; Barkley v. Tarrant Co., 53 Tex. 257; Railway v. Scott, 30 Tex. Civ. App. 496, 71 S. W. 26.

While there were two answers in this case, they contain exactly the same pleas of contributory negligence, and the same are not involved or technical. The defendant availed itself of its right to have a more specific submission of the issues by having special charge No. 4 given, which reads as follows: "You are instructed that if you believe from the evidence in this case that the injuries sustained by the plaintiff were due to his

own voluntary act in placing himself in a position of danger, and not due to any negligence on the part of defendants, your verdict should be in favor of the defendants." Also special charges Nos. 5 and 8, heretofore copied in this opinion, and special charge No. 7, fully defining negligence and contributory negligence. Taking all of these charges together, defendant has had a fair submission of the issues, and, if a more specific submission of any other issue was desired, a special charge should have been requested. Under the circumstances, we overrule the assignment.

[16] The twenty-third assignment is that the court erred in a certain portion of his charge. The assignment is submitted as a fundamental error. There being no proposition, and the assignment itself being no proposition, we decline to consider same. However, the charge in our opinion was not objectionable.

[17] The twenty-seventh and thirty-first assignments, which complain of the verdict as excessive, are overruled.

The twenty-eighth assignment, complaining of the action of the court in permitting plaintiff to file a trial amendment, shows no error, and is overruled.

[18] The thirtieth assignment is to the effect that the court erred in rendering judgment because the verdict is contrary to the evidence in that there is no evidence of any impaired earning capacity, because plaintiff is earning exactly what he earned prior to his injuries. The ground alleged would be proper to consider under an assignment raising the issue of excessiveness in the verdict, but, if correct (which we do not concede as to earning capacity), would not show any reason for holding the judgment not supported by evidence.

[19] The thirty-second assignment is not briefed in accordance with the rules, and should not be considered. However, the same shows no error.

The thirty-third, thirty-fourth, thirty-fifth, and thirty-sixth assignments are neither submitted as propositions, nor has any proposition been urged thereunder. They will therefore not be considered.

[20] The thirty-seventh assignment is as follows: "The court erred in refusing to grant defendants' amended motion for a new trial for all reasons therein stated, and particularly because it appears from the evidence introduced on said motion that the jury was guilty of improper conduct in the jury room, and were actuated by prejudice and passion in rendering their verdict therein, and considered matters and facts which were not in evidence and were known only to certain of the jurors, all of which appears more fully from defendant's bill of exception No. 7." Under the word "proposition" is the following: "The foregoing is submitted as a proposition itself." The assignment shows that it embraces many distinct propositions, because it assigns error upon the overruling of each ground set up in the motion for new trial. We cannot be required to pass upon an assignment thus presented. Hayes v. Groesbeck, 146 S. W. 327; Williamson v. Powell, 140 S. W. 361; McAllen v. Raphael, 96 S. W. 760.

The assignment particularly urges the following grounds why the motion should have been granted:

[21] (1) That one of the jurors was incompetent because he could not read and write the English language. It has been frequently held that this character of objection comes too late after verdict is rendered. Sinsheimer v. Edward Weil Co., 129 S. W. 188; Railway v. Woodward, 26 Tex. Civ. App. 389, 63 S. W. 1051; Newman v. Dodson, 61 Tex. 96; Schuster v. La Londe, 57 Tex. 29; Moore v. Woodson, 44 Tex. Civ. App. 503, 99 S. W. 120.

[22] (2) That there was misconduct on the part of the jury. The acts referred to briefly stated were: (a) One of the jurors during the argument, when counsel for plaintiff in argument asked whose fault it was that plaintiff was run over, answered "the company's fault." (b) That some question came up in the jury room whether plaintiff had a family, and one juryman remarked that he had a son or son-in-law working for the drug company. (c) That it was mentioned and discussed that, if the drug company changed hands, plaintiff might lose his position as watchman. (d) That newspaper articles were published concerning the trial, and seen by jurors.

We have examined all the testimony relating to this matter. The answer given by the juror was given in answer to a question which he supposed was addressed to him. It is true this juror wanted to give plaintiff all he sued for, but he did not know plaintiff, nor know anything of the case before the trial. It appears that his remark did not influence the other jurors. The talk about plaintiff's family was promptly checked by the foreman, nor did such talk disclose whether he had a large or small family, but merely that he had a grown son or son-in-law. The discussion about his losing his position was also very brief, some of the jurors not hearing it, and one juror said it was mentioned as a probability because he could not get around well on account of his leg. The evidence does not disclose that any of the jurors actually read the newspaper articles, though one or two of them noticed the same. The newspaper articles showed that the court had overruled the motion to quash the panel of jurors in this case based on manner of drawing same, and that attorneys for the appellant were going to test the validity of the International & Great Northern bill with respect to the matter of making the new company responsible for certain claims against the old company.

All the jurors deny that they were influenced by any of the matters above mentioned. We are of the opinion that the trial judge did not abuse his discretion in refusing a new trial on the grounds just discussed. H. & T. C. R. Co. v. Gray, 137 S. W. 730; Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 793, 132 Am. St. Rep. 889; City of Fort Worth v. Lopp, 134 S. W. 825.

The judgment will be reformed so as not to render any judgment, personal in character, against T. J. Freeman, receiver, but only to show the accrual of the liability to plaintiff while he was receiver, and the consequent liability of the International & Great Northern Railway Company for the indebtedness to plaintiff found to exist by the verdict of the jury.

As so reformed, the judgment will be affirmed.

### On Motion for Rehearing.

[23] Appellants in their motion for rehearing complain of several findings of fact made by us. Before going over said objections, we wish to say that, the jury having passed upon the credibility of the witnesses and found in plaintiff's favor, necessarily we have adopted his version where a dispute existed. Appellants say we erred in stating that plaintiff "did not know it was a violation of such an ordinance to leave them at this place" (meaning plaintiff's team). We quote from his testimony as follows: "I did not think it necessary to leave any one in charge of them while I went into the baggageroom. I know that it was against the city ordinance on the streets. I did not know that it was a violation of the law there. I knew there was a city ordinance on the street." It was admitted that the place where plaintiff left his team was on property of the International & Great Northern, and not on any street. Appellants also complain because we do not find that the place where the team was left untied was in the city of San Antonio, and call our attention to the fact that plaintiff's petition, upon which the case was tried, contains the following statement: "That said receiver, on the date hereinafter mentioned, maintained in the city of San Antonio a freight and passenger depot, which was a public place, to which the public in general was invited, and especially upon business connected with receiving or shipping of freight or baggage; that at said depot, and as a part thereof, the defendant T. J. Freeman, receiver, operated and maintained a large baggageroom for the receipt and delivery of baggage, and on the east side of said baggageroom, where there was a platform for the handling of trunks and baggage, the said defendant had and maintained three large iron or metal doors."

Appellant also complains of the portion of our opinion stating that the baggagemaster knew the drivers of vehicles coming after baggage left their teams untied. We have again examined the record, and, while we find no express statement to that effect by the baggagemaster, yet we find evidence which we think amply sustains our conclusion. Appellant offered in evidence certain photographs of the baggage platform and its vicinity. One of these shows a team standing by the platform, and the driver standing on the platform. It shows the iron posts around the little park, and, taken with the evidence, shows conclusively that said posts are too far away for any team to be tied to same while standing by the platform or backed up to it. The undisputed evidence shows there was no other place to tie teams. The baggagemaster testified: "When transfer wagons come there with baggage, they generally back up, back up against that place" —meaning the platform. He also testified he had seen horses driven alongside like in the photograph. That they usually stand a little further up than where the wagon is shown to be by the photograph. That any place between the two doors is where the wagons come up to do business with the International & Great Northern Railway. That he knew plaintiff was in the habit of coming with the wagon to get trunks. This evidence clearly shows that the baggagemaster was familiar with the customs of those coming there for baggage with reference to where they left their teams. The witness Banks testified that everybody left their teams there that got a trunk.

[24] Appellants contend earnestly that we should hold that plaintiff was guilty of contributory negligence by leaving his team untied in a public place in violation of the city ordinance, and that such negligence proximately contributed to the injuries suffered by plaintiff. In our findings of fact, we stated that the city ordinance with reference to leaving teams untied and unattended was in force. We notice appellee contends in his brief that the evidence does not show the same to have been in force at the time of plaintiff's injury. The trial began on November 8, 1911. Plaintiff was injured on January 27, 1909. The evidence does not show when the ordinance was adopted. The plaintiff testified to a knowledge of an ordinance relating to leaving teams on the street, but there is nothing to show that the ordinance he referred to was the one introduced in evidence which related to plazas, streets, avenues, lanes, alleys, and other public places.

We have gone over this matter carefully and find: (1) That the issue was submitted to the jury upon a special charge asked by appellants, and the jury found against such contention. (2) We do not find, as a matter of law, that plaintiff was guilty of contributory negligence by leaving his team as he did, especially as the evidence fails to show the ordinance relied upon to have been in

force at the time the injury to plaintiff occurred. (3) Were we to concede that plaintiff was guilty of negligence, as a matter of law, in so leaving his team, it would still be a matter for the jury to determine whether such negligence was the proximate cause of plaintiff's injury, or whether same was proximately caused by the supervening negligence of the baggagemaster.

We adhere to our former holding that the evidence was sufficient to warrant the jury in finding against appellants on such issue.

The motion is overruled.